**LAGUANA v. ANSELL et al.**
Civ. No. 31–51.

District Court of Guam.
Feb. 29, 1952.

Lyle H. Turner, Agana, Guam, Albert A. Spiegel, Santa Monica, Cal., for plaintiff.

Knight G. Aulsbrook, Atty. Gen. of Guam, Hogen J. Kallemeyn, Asst. Atty. Gen., of Guam, for defendant, Acting Tax Commissioner and Acting Treasurer.

Mastin G. White, Solicitor, Department of Interior, Irwin W. Silverman, Chief Counsel, Office of Territories, Department of Interior, Washington, D. C., Ellis N. Slack, Acting Asst. Atty. Gen., I. Henry Kutz, Sp. Asst. to Atty. Gen., James G. Mackey, U. S. Atty., for District of Guam, Agana, Guam (Shirley Ecker Boskey, Atty., Dept of Interior, Washington, D. C., of counsel), for defendant-intervener United States.

SHRIVER, Judge.

This is a test action brought by the plaintiff, hereinafter called the taxpayer, to determine. what construction should be placed upon Sections 30 and 31 of the Or-

ganic Act of Guam 64 Stat. 392, 48 U.S. C.A. §§ 1421h and 1421i. The United States intervened and joined with the Government of Guam in a common defense. I shall refer to them as the governments. I have had the benefit of extended oral argument by both sides and an excellent brief by the governments. The plaintiff elected in the interest of expediting the case not to file a reply brief.

The facts are stipulated. The taxpayer is employed by a Guam corporation and all of his income was or will be earned in Guam. The corporation, in accordance with its instructions from the Acting Treasurer of Guam, withheld income-tax payments from the earnings of the taxpayer and paid them to the Acting Treasurer under protest. The taxpayer demanded their return which was refused.

The sections referred to supra provide:

Sec. 30. "All customs duties and Federal income taxes derived from Guam, the proceeds of all taxes collected under the internal-revenue laws of the United States on articles produced in Guam and transported to the United States, its Territories, or possessions, or consumed in Guam, and the proceeds of any other taxes which may be levied by the Congress on the inhabitants of Guam, and all quarantine, passport, immigration, and naturalization fees collected in Guam shall be covered into the treasury of Guam and held in account for the government of Guam, and shall be expended for the benefit and government of Guam in accordance with the annual budgets."

Sec. 31. "The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam."

Sec. 31 became effective as of January 1, 1951 by provision of Ex.Ord. No. 10211, Feb. 6, 1951, 48 U.S.C.A. § 1421i note, 16 F.R.1167.

The position taken by the taxpayer is that Sec. 31 made applicable to Guam the Federal income-tax laws as such, including any provisions granting exemptions from taxation on income derived from sources within possession of the United States, 26 U.S.C.A. §§ 251 and 252.

The position taken by the governments is that the effect of Sec. 31 is to set up a separate income-tax system for Guam which is a duplicate of the Federal income-tax system; that the United States Congress in exercising its authority to legislate for the unincorporated territories and possessions has established a separate and distinct taxing jurisdiction which contemplates collection of the tax by territorial officials for the use and benefit of the inhabitants of the territory; that in the alternative the taxpayer cannot be heard to complain in the instant case as the tax was owing and reached the eventual source for which it was intended.

The history of Sec. 30 of the Organic Act of Guam indicates that it was part of the original bill which later became law and contemplated the collection by the appropriate Federal officials of those revenues, Federal in nature, and subsequent covering into the treasury of Guam. That section did not provide for the general imposition of income taxes in Guam.

Sec. 31 was introduced in the House by Congressman Miller of Nebraska, first in committee and then on the floor. Cong.Rec. May 23, 1950, Vol. 96, pp. 7673 and 7674. The Congressman stated in response to a question: "There will be no direct payment by the Treasury of this country. The amendment we have just adopted in committee provides that the income-tax laws in force in the United States of America and which may hereafter be in force will be the law over there. That will be of great help in plugging certain loopholes. The people of Guam and a large number of civilians and workers over there on construction work, as well as military personnel, pay no income tax or have no withholding tax. In fact they are paid a bonus for working there. *This will plug that loophole and bring in some money to the United States Treasury.*" (Italics supplied.)

Immediately thereafter Congressman Scrivner stated: "In other words, I am to understand that there is sufficient property, there are sufficient sources of revenue right there on the island of Guam *so that they will be able to set up a tax structure suffi-*

*cient to carry their own expenses of government without asking for any contributions from the United States to help carry their government cost?"* (Italics supplied.)

Congressmen Miller and Peterson replied that this was their understanding. The previous question was moved and the bill was passed.

This problem first came before me in connection with Crain v. Government of Guam, D.C., 97 F.Supp. 433 (now on appeal) in which I volunteered the statement, as the principal question was one of jurisdiction, that "It would appear to be clear that the effect of Sec. 31 is to create a tax liability on Guam, insofar as the taxpayer is concerned, on the same basis as if he were resident in the continental United States and that the Government of Guam is entitled to such tax regardless of which government collects it."

▮ It seems to me that it is little more than vagrant intellectual exercise to assume that in these days of great challenge the United States Congress intended by Sec. 31 to do less than impose the full burden of income taxation, measured by the Federal tax, in this unincorporated territory. Even the very limited discussion indicates that the Congress was fully aware of the fact that it was taxing those who may have previously come within one or more of the exemptions in 26 U.S.C.A. §§ 251 and 252.

▮ The United States Treasury Department has construed Sec. 31 as establishing a territorial tax to be administered by the officials of the Guam government and the United States supports that holding. 1951-6-13559, I.T. 4046. The taxpayer has therefore complied with the instructions of both governments in meeting his tax liability and his tax has covered into the treasury of Guam. He cannot now be heard to say that the tax should be returned to him in order that it be paid to the United States and returned to the Guam treasury from which it was taken. The case of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, disposes of any such contention.

The question remains as to whether Sec. 31 imposes a Federal tax to be collected by the United States or a territorial tax to be collected by the Government of Guam.

At the conclusion of oral argument I expressed the view to counsel in chambers that I believed the United States Congress intended to impose a Federal income tax even though the Virgin Islands tax to which reference is made hereafter appeared to indicate the contrary. When the Congress imposes a tax of this nature it intends that it shall be collected. To the extent that a territorial tax is not collected and revenues fall short of territorial needs the Congress faces requests for appropriations to meet such deficiencies. As is well known Guam was in a combat area and most of its permanent buildings, governmental and otherwise, were destroyed. Consequently the revenue needs of Guam are not those of an established, going community but a community faced with the necessity for making large capital investments to create permanent facilities and to replace temporary facilities. Without attempting to project the economic situation in the future the present situation is that the majority of the population in Guam consists of persons who are essentially transient. These are members of the armed services on tours of duty, large numbers of employees of government contractors and thousands of Filipino workers. Those persons reside on military reservations where the Government of Guam has only a limited jurisdiction for effective tax collection purposes in those instances when the responsibility for collection is not clearly that of the United States under Sec. 30. In addition it can hardly be expected that those who are confronted with the necessity for paying income taxes for the first time in Guam will greet that necessity with enthusiasm. I point out these abnormalities in order to emphasize that at the present time and in the immediate future the sources of revenue may be much greater than when the present construction program is over. Unless much of this revenue is to escape it is my view that the United States can make more effective collections. There is also to be considered in support of this view that to expect a newly created government to be able to deal with the complexities of the present income-tax laws is, to say the least, questionable.

. As the governments point out, however, in those instances when Congress has made the income-tax laws in force in the United States applicable to possessions it has in the two major instances of the Philippines and Puerto Rico directed that such tax was to be collected by the territorial governments; and the courts have held that the effect of such legislation was to levy a territorial tax. ·Lawrence v. Wardell, 9 Cir., 273 F. 406; Robinette v. Commissioner of Internal Revenue, 6 Cir., 139 ·F.2d 285. Later both the Philippines and Puerto Rico were given authority to adopt their own income-tax laws.

The Naval Appropriations Act of 1921, 42 Stat. 122, 123, contained the following proviso: "That the income tax laws now in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, *except that the proceeds of such taxes shall be paid into the treasuries of said islands.*" (Italics supplied.)

It does not appear that this proviso has been the subject of reported litigation but the United States Treasury construed it in its opinion I.T. 2946 (C.B. X14–2, 109(1935) as establishing separate and distinct taxing jurisdictions although their income-tax laws arose from an identical statute applicable to each. In its opinion I.T. 4046, 1951–6–13559 is similarly construed Sec. 31, supra, as establishing a separate territorial tax in Guam and that Section 251(a) of the Internal Revenue Code is applicable insofar as taxes due the United States are involved.

■ Regardless of my initial view that Sec. 31 imposed a Federal tax to be collected by the United States, I believe that I shall add to any existing confusion by persisting in that view in the light of the position taken by the governments involved and my conviction that in any event a tax is imposed. I hold that the effect of Sec. 31 is to impose a territorial tax to be collected by the proper officials of the Government of Guam.

It is herewith ordered that the action is dismissed at plaintiff's cost.