**GOVERNMENT OF GUAM, Appellant,**

v.

**George E. KOSTER and Crystal K. Koster, Appellees.**

No. 20438.

United States Court of Appeals
Ninth Circuit.

June 8, 1966.

Harold W. Burnett, Atty. Gen., John C. Dierking, Jr., Asst. Atty. Gen., Government of Guam, Agana, Guam, for appellant.

Walter S. Ferenz, David S. Madis, of Barrett, Ferenz & Trapp, Agana, Guam, for appellees.

Before HAMLEY, JERTBERG and ELY, Circuit Judges.

HAMLEY, Circuit Judge.

In their joint Guam Territorial income tax returns for the years 1957 through 1960, George E. Koster and his wife, Crystal K. Koster, claimed as deductions, mainland United States business losses for those years. Guam tax officials disallowed these deductions, asserting that under applicable regulations, only expenses, losses or other deductions directly attributable to gross income derived from or earned in Guam may be claimed. The taxpayers paid the asserted deficiencies and brought this action for a refund contending that the regulations in question are invalid.

While there were several issues in the case, the question of the validity of the pertinent regulations was separately tried pursuant to Rule 42(b), Federal Rules of Civil Procedure. A judgment was entered adjudicating the regulations to be invalid. The Government of Guam then took this interlocutory appeal, following the procedure prescribed in 28 U.S.C. § 1292(b) (1964).

The authority of the Government of Guam to collect income taxes was initially derived from section 31 of the Organic Act of Guam, 64 Stat. 392 (1950).[1] That section as originally enacted, reads:

"The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam."

At that time the income-tax laws in force in the United States included section 22(a) of the 1939 Internal Revenue Code, 53 Stat. 9 (1939), defining "gross income" to include "income derived from any source whatsoever." In effect this same provision was carried forward into the 1954 Internal Revenue Code, section 61 thereof, 26 U.S.C. § 61 (1964), which defines "gross income" as "all income from whatever source derived." Thus if this language of either the 1939 or 1954 Code controls, citizens of Guam are liable for a Territorial income tax on gross income derived from business transacted on mainland United States. It would follow that mainland United States business losses would be deductible.

However, on March 15, 1952, Guam officials promulgated Regulation No. 1, in which the term "gross income" was defined so as to exclude income not derived from or earned in Guam. On July 2, 1953, Guam officials promulgated Regulation No. 3, under which only expenses, losses or other deductions directly attributable to Guam taxable gross income may be allowed in computing Guam tax liability.

---

1. Lamkin v. Brown and Root, Inc., 9 Cir., 233 F.2d 320; Wilson v. Kennedy, 9 Cir., 232 F.2d 153, 154; Laguana v. Ansell, D.C.Guam, 102 F.Supp. 919, 922, aff'd 9 Cir., 212 F.2d 207; Jennings v. United States, 168 F.Supp. 781, 784, 144 Ct.Cl. 28.

Section 31 of the Organic Act was amended in 1958, 72 Stat. 681 (1958), 48 U.S.C. § 1421i(a)–(h) (1964).[2] Regulations 1 and 3 remained in effect without change and, pursuant thereto, the claimed mainland United States business losses for the years 1957 through 1960 were disallowed. The district court held that these regulations are in conflict with section 31 of the Organic Act, as originally enacted, and as amended, and are therefore invalid. The Government of Guam disputes this conclusion.

■■ As originally enacted, section 31 contained no express provision authorizing tax officials of Guam to promulgate rules and regulations pertaining to the Territorial income tax. However, in subsection (d) (2) of section 31, as amended in 1958, express authority was conferred upon Guam officials to make "(n)eedful rules and regulations for enforcement of the Guam Territorial income tax. * * *" We think that, by necessary intendment, this same authority was impliedly conferred by the initial enactment of section 31. However, there is nothing in the

2. Subsections (a) to (e) of amended section 31, here pertinent, read as follows:

"§ 1421i. Income tax.

"(a) Applicability of Federal laws.

"The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam.

"(b) Guam Territorial income tax.

"The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose a separate Territorial income tax, payable to the government of Guam, which tax is designated the 'Guam Territorial income tax'.

"(c) Enforcement of Tax.

"The administration and enforcement of the Guam Territorial income tax shall be performed by or under the supervision of the Governor. Any function needful to the administration and enforcement of the income-tax laws in force in Guam pursuant to subsection (a) of this section shall be performed by any officer or employee of the government of Guam duly authorized by the Governor (either directly, or indirectly by one or more redelegations of authority) to perform such function.

"(d) Definition of 'income-tax laws'; administration and enforcement; rules and regulations.

"(1) The income-tax laws in force in Guam pursuant to subsection (a) of this section include but are not limited to the following provisions of the Internal Revenue Code of 1954, where not manifestly inapplicable or incompatible with the intent of this section: Subtitle A (not including chapter 2 and section 931); chapters 24 and 25 of subtitle C, with reference to the collection of income tax at source on wages; and all provisions of subtitle F which apply to the income tax, including provisions as to crimes, other offenses, and forfeitures

contained in chapter 75. For the period after 1950 and prior to the effective date of the repeal of any provision of the Internal Revenue Code of 1939 which corresponds to one or more of those provisions of the Internal Revenue Code of 1954 which are included in the income-tax laws in force in Guam pursuant to subsection (a) of this section, such income-tax laws include but are not limited to such provisions of the Internal Revenue Code of 1939.

"(2) The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax. Needful rules and regulations for enforcement of the Guam Territorial income tax shall be prescribed by the Governor. The Governor or his delegate shall have authority to issue, from time to time, in whole or in part, the text of the income-tax laws in force in Guam pursuant to subsection (a) of this section.

"(e) Substitution of terms.

"In applying as the Guam Territorial income tax the income-tax laws in force in Guam pursuant to subsection (a) of this section, except where it is manifestly otherwise required, the applicable provisions of the Internal Revenue Codes of 1954 and 1939, shall be read so as to substitute 'Guam' for 'United States', 'Governor or his delegate' for 'Secretary or his delegate', 'Governor or his delegate' for 'Commissioner of Internal Revenue' and 'Collector of Internal Revenue', 'District Court of Guam' for 'district court' and with other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section."

record to indicate that a redefinition of "gross income" to exclude income not derived or earned in Guam was needed in order to obtain enforcement of the Territorial tax. Such a modification in the scope of the tax goes to substance and not to administration or collection.

Section 31 of the *Organic Act*, as originally enacted, took no account of the likelihood that some of the provisions of the complex income-tax laws of the United States would be manifestly inapplicable in an income-tax law for the small unincorporated Territory of Guam. But this was remedied to a considerable extent by the 1958 amendment of that section.[3] Subsection (d) (1) of amended section 31 provides in part that the income-tax laws in force in Guam pursuant to subsection (a) include specified provisions of the Internal Revenue Code of 1954,[4] but only " * * * where not manifestly inapplicable or incompatible with the intent of this section."

▮▮▮ In our opinion this provision authorized Guam tax officials to promulgate regulations setting aside or modifying provisions of the income-tax laws of the United States which are manifestly inapplicable or incompatible with the intent of section 31. We also think that, by necessary intendment, this same authority was impliedly conferred by the initial enactment of section 31. But, again, there is nothing in the record to indicate that the federal definition of "gross income" which embraces within that term externally earned income is manifestly inapplicable in a Guam Territorial income-tax law, or is incompatible with the intent of section 31.

In contending that Guam taxing officials had power, under the 1958 enactment, to redefine the term "gross income"

in the manner indicated, Guam points to the following language in an explanatory note accompanying Report No. 2176 of the Senate Committee on Interior and Insular Affairs, dated August 4, 1958, pertaining to the 1958 legislation:

"Paragraph (2) [of subsection (d)] also authorizes the issuance of regulations by the Governor, in connection with the Guam Territorial income tax, and authorizes the Governor or his delegate to publish the text of the tax from time to time in whole or in part. He is thus authorized to *adapt* in written version the income-tax laws of the United States as the Guam Territorial income tax in accordance with the intent and under the terms of section 31." (U.S.Code Cong. and Admin. News, 1958, Vol. 2, p. 3647, at 3652–3653) (Emphasis supplied.)

Calling attention to the word "adapt" in this statement, Guam argues that a legislative intent is thereby indicated to authorize Guam officials to " * * * adapt, modify and adjust the United States Internal Revenue Code, designed for a huge and fully developed economy, by suitable regulation so that it may be usable in a small and as yet underdeveloped island territory."

▮ The word "adapt" must be read in conjunction with the closing words of the sentence in which it appears, *viz.*, " * * * in accordance with the intent and under the terms of section 31." Section 31, read as a whole, exhibits an intent to apply to Guam the substantive provisions of the income-tax laws of the United States (with specified exceptions), except where manifestly inapplicable or incompatible with the intent of that section. Any adaptation which cannot be so justified is not authorized.

3. As this court said in Bromberg v. Ingling, 9 Cir., 300 F.2d 859, 860:
  "Experience developed that the foregoing broad language had been too casual and left holes in the coat as it was fitted to Guam. These were fairly well patched in August 1958, by Public Law 85–688, 72 Stat. 681, 48 U.S.C.A. § 1421i, which relates solely to Guam's income tax."

4. Among the provisions of the 1954 Code thus referred to is Subtitle A, not including chapter 2 and section 931. Subtitle A pertains to income taxes and section 61, defining the term "gross income" to mean "all income from whatever source derived," is under chapter 1 of that Subtitle.

Guam argues that weight must be given to the long-continued administrative interpretation which Guam officials have placed on section 31, as manifested by Regulation No. 1, promulgated on March 15, 1952, and Regulation No. 3, promulgated on July 2, 1953. Guam also asserts that Congress was fully aware of the existence and provisions of these regulations at the time of the 1958 enactment and, therefore, by re-enacting in full the original section 31, Congress showed a clear intent to affirm and validate those regulations.

■■ Where the meaning of a statute is rendered obscure by ambiguities, inconsistencies or complexities, there is room for administrative interpretation, and where long-standing and consistently followed, such interpretation is given great weight by the courts. Regulation No. 1, however, purports to effectuate a substantive modification of a statutory definition which is not ambiguous, inconsistent or complex. It is in obvious conflict with that statute and is therefore not persuasive in arriving at the correct construction of the statute, unless Congress reënacted that statute with the regulation in mind.

There is nothing in the legislative history supporting Guam's assertion that Congress was fully aware of the existence and content of Regulations Nos. 1 and 3. Moreover, the 1958 amendment does more than reënact section 31; it adds additional provisions, limiting in nature, which make it clear that the federal definition of "gross income" is to control unless manifestly inapplicable or incompatible with the intent of section 31 read as a whole. As before stated, no such inapplicability or incompatibility is demonstrated in the record before us.

■ The United States Commissioner of Internal Revenue may not prescribe any regulations which are not consistent with the federal tax statutes or which add

a restriction to a statute which is not justified by the statutory language or the intent of Congress. Smith v. Commissioner of Internal Revenue, 9 Cir., 332 F. 2d 671, 673. Except to overcome manifest inapplicability, or incompatibility with the general intent of section 31 of the Organic Act, as amended, Guam tax officials are similarly limited.[5]

Affirmed.

---

5. Guam seems to concede as much when it says on page 8 of its brief:
   "The Committee Report in reference to Subsection (d) (2) shows a clear intent that the Guam authorities shall have power to issue income tax regulations and that such power will be of the same nature as that possessed by the Secretary of the Treasury to issue Treasury Regulations."