**SAYRE & COMPANY, Ltd., Appellant,**

v.

**R. A. RIDDELL, Commissioner of Revenue and Taxation, Appellee.**

No. 20771.

United States Court of Appeals
Ninth Circuit.

May 28, 1968.

**408**

W. Scott Barrett (argued), David S. Madis, of Barrett, Ferenz & Trapp, Oakland, Cal., and Agana, Guam, for appellant.

Olen Burnett (argued), Deputy Atty. Gen., Harold Burnett, Atty. Gen., C. E. Morrison, Asst. Atty. Gen., Agana, Guam; J. Edwin Shillingburg, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY and CARTER, Circuit Judges.

BROWNING, Circuit Judge:

We are called upon again, as we were in Atkins-Kroll (Guam) Ltd. v. Government of Guam, 367 F.2d 127 (1966), to interpret sections 881 and 7701 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 881, 7701 (1964), as applied to Guam by section 31 of the Organic Act of Guam, 64 Stat. 392 (1950), as amended, 72 Stat. 681 (1958), 48 U.S.C. § 1421i (1964).

Upon re-examination of our interpretation of these statutes we have concluded that *Atkins-Kroll* must be overruled.

Section 31 of the Organic Act, as amended, 48 U.S.C. § 1421i, provides in subsection (a) that the income tax laws in force in the United States shall likewise be in force in Guam. Subsection (d) (1) limits this incorporation by reference to those provisions of the federal income tax code which are "not manifestly inapplicable or incompatible with the intent of this section." Subsection (e) provides that "Guam" is to be substituted for "United States" in the applicable provisions of the federal statute "except where it is manifestly otherwise required," and that the federal statute is to be read "with other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section."

Section 881 of I.R.C.1954 imposes a thirty per cent tax upon gross income received from sources within the United States by a "foreign corporation." Section 7701(a) (5) defines "foreign" as applied to a corporation to mean a corporation which is not "domestic." Section 7701(a) (4) defines a "domestic" corporation as one "created or organized in the United States or under the law of the

United States or of any State or Territory." [1]

*Atkins-Kroll* involved an effort by Guam to collect the section 881 tax on dividends paid to a California corporation by its Guam subsidiary. We held that the words "or of any other State or Territory" in the definition in section 7701(a) (4) were to be given their full effect, so that Guam must treat a California corporation as a "domestic" rather than a "foreign" corporation for the purposes of section 881. The rationale of our decision was that if these words were omitted and the California corporation treated as a "foreign" corporation for the purposes of the Guam tax "a manifest and substantial inequity results, for \* \* \* the combined Guam and Federal tax burden on the income which a California corporation ultimately receives from the business of its Guam subsidiary substantially exceeds the applicable corporate income tax rate under either the laws of Guam or the United States." 367 F.2d at 129. [2]

In the case now before us Guam seeks to apply section 881 to interest and commissions received by an Hawaii corporation from a Guam sole proprietorship. These payments are deductible business expenses to the Guam sole proprietorship. Failure to collect the section 881 tax would result in no Guam tax at all—a "manifest and substantial inequity" which, under *Atkins-Kroll*, might seem alone enough to require that the Hawaii parent be treated by Guam as a "foreign" corporation for the purpose of section 881.

It seems unlikely, however, that Congress could have intended that Guam tax officials, with this court's occasional assistance, should have power to vary the statutory definitions of "foreign" and "domestic" corporations in accordance with their, or our, notion of what would and what would not be equitable in a given situation. And it is at least doubtful that Congress would have thought the result we rejected in *Atkins-Kroll* so manifestly unjust as we declared it to be. [3]

We are therefore led to re-examine our decision in *Atkins-Kroll* to determine whether there may not be available more certain and objective guidelines for the interpretation of the Guam Territorial income tax.

Guam had no income tax prior to 1951. Guamanians were subject to the federal income tax only on income from sources within the United States, and not at all on income earned in Guam. Wilson v. Kennedy, 232 F.2d 153, 154 (9th Cir. 1956). The revenue needs of the Island government were met principally by direct appropriations from the United States Treasury. Congress's immediate purposes in providing that the income tax laws in force in the United States should likewise be in force in Guam were to subject locally earned income to taxation and to make the Government of Guam financially self-sufficient. Laguana v. Ansell, 102 F.Supp. 919, 920–21 (D.C.Guam 1952), aff'd 212 F.2d 207 (9th Cir. 1954). [4]

---

1. Guam is not a "territory" within the meaning of Section 7701(a) (4). This term included only Alaska and Hawaii, before they attained statehood. 26 C.F.R. § 301.7701–5 (1968). Guam is considered a "possession," and its corporations are thus "foreign" for federal income tax purposes. See note 8.

2. This is the result of the limitations imposed by § 904 of the Internal Revenue Code of 1954 upon the maximum credit allowable to a domestic corporation for taxes paid to a foreign country or possession of the United States.

3. The result found inequitable in *Atkins-Kroll* follows whenever the United States applies § 881 to a United States subsidiary and foreign parent; and, as noted later, Guam corporations are considered "foreign" for the purposes of the United States income tax. Rev.Rul. 56–616, 1956–2 Cum.Bull. 589.

4. Congress did not view the civil government provided for Guam by the Organic Act as a transitory stage on the road to statehood. On the contrary, it made clear that "No commitment as to statehood, express or implied, is held out in

Taxpayers soon contended that section 31 of the Organic Act of Guam simply extended the territorial coverage of the United States Internal Revenue Code to include Guam. We rejected this contention in *Laguana*, adopting the district court's conclusion that section 31 established a territorial income tax to be collected by the Government of Guam, and that Guam and the United States were to be treated as separate and distinct taxing jurisdictions even though their income tax laws arose from an identical statute applicable to each.[5]

Congress confirmed this view of section 31 when it amended the section to its present form in 1958. Congress's attention was called to our decision in *Laguana* and to a contrary holding of the Court of Claims [6] that section 31 did not create a separate territorial income tax (2 U.S. Code Cong. & Ad.News 1958, p. 3640). Congress expressly rejected the latter view in favor of the ruling in *Laguana* (p. 3647).

At the same time Congress was also advised that, as applied to Guam, "certain provisions" of the federal tax code "must be considered inapplicable *in order to carry out the intent of the separate tax*" (p. 3652). To meet that problem Congress adopted subsection (d) (1) of section 31, 48 U.S.C. § 1421i(d) (1), limiting the Guam territorial tax to provisions of the federal income tax code "not manifestly inapplicable or incompatible with the intent of this section." Subsection (d) (1) specifically identifies only two provisions of the Internal Revenue Code of 1954 to be excluded: Chapter 2 of Subtitle A, dealing with a tax on self-employment income; and section 931, providing for the exclusion

from gross income of income derived from sources outside the United States. The reason for the first exclusion does not appear; but as to the second the Senate Committee Report points out that unless section 931 were excluded it would have the effect of exempting most Guam taxpayers from payment of the separate territorial income tax which it was the purpose of section 31 to impose. 2 U.S.Code Cong. & Adm.News 1958 at pp. 3647, 3649.

■ Thus it seems reasonably clear that Congress viewed section 31 as creating a separate integral taxing structure for Guam "mirroring" the provisions of the federal tax code, except for those provisions which were incompatible with such a "separate tax" structure.

The materials submitted to Congress by the Department of the Interior in recommending enactment of the 1958 amendments support this conclusion. The Department of the Interior advised Congress that section 31 had been interpreted as providing a separate territorial tax system for Guam, comparable to that provided for the Virgin Islands, and that the purpose of the amendments was to continue this separate tax system in effect but "to add clarification in accordance with the interpretations" which the Department cited to Congress. 2 U.S. Code Cong. & Ad.News 1958 at p. 3651. The judicial and administrative interpretations referred to make it clear that the purpose of the amended statute was to give Guam a separate, integral tax system, which would duplicate the United States' tax system in all substantive particulars.

The judicial decisions cited by the Department dealt with the general pur-

---

the measure." 2 U.S.Code Cong. & Ad. News 1950 at p. 2844.

5. As the district court pointed out (102 F.Supp. at 920–921), the language of § 30 of the Organic Act indicates that the committee drafting the bill may have contemplated that the federal income tax would simply be extended to Guam, and the revenues collected from Guam by federal officials would then be trans-

ferred to the Treasury of Guam. Section 31 was added on the floor of the House with explanatory comments which made it clear that Congress intended to create a separate, though identical, income tax structure for Guam itself.

6. *Jennings v. United States*, 155 F.Supp. 571 (Ct.Cl.1957), subsequently vacated, 168 F.Supp. 781 (Ct.Cl.1958).

pose of Congress when it adopted section 31 in 1950. They held that Congress's general purpose was that just stated. The first was Laguana v. Ansell, mentioned earlier. The second was Wilson v. Kennedy, 123 F.Supp. 156 (D.C.Guam 1954), aff'd, 232 F.2d 153 (9th Cir. 1956), in which the District Court of Guam held that section 31 imposes a territorial income tax to be paid to and collected by the proper officials of the Government of Guam; that the tax to be paid is that which the taxpayer would pay to the United States if residing there; and that the enforcement provisions of the federal statute are available to the Guam officials "subject to those non-substantive changes in nomenclature as are necessary to avoid confusion as to the taxing jurisdiction involved." 123 F.Supp. at 160. Also cited were two decisions of this court [Phelan v. Taitano, 233 F.2d 117 (1956), and Lamkin v. Brown and Root, 233 F.2d 320 (1956)], and two of lower courts [Holbrook v. Taitano, 125 F.Supp. 14 (D.C.Guam 1954), and Guam v. Kaanche, 137 F.Supp. 189 (D.C.Guam, App.Div.1956)], confirming and applying the basic premise that section 31 created a separate territorial income tax law applicable to Guam.

The administrative decisions cited by the Department dealt in more detail with the nature of the separate tax structure which Congress intended to provide for the Virgin Islands and, later, for Guam. The underlying theme of these decisions was that Congress intended that each territory should apply within its geographical jurisdiction a separate income tax system having the same basic structure as the income tax system applied by the United States within its geographical jurisdiction.

■ Before turning to these administrative decisions the basic structure of the Internal Revenue Code as applied by the United States should be noted. It may be summarized as follows. The tax imposed is based upon jurisdiction over either the person of the taxpayer or the income taxed. Citizens (including domestic corporations) and resident aliens are taxed on all of their net income, regardless of its source. Non-resident aliens and foreign corporations are taxed only on income from sources within the jurisdiction—upon net income from such sources if the non-resident alien or foreign corporation is engaged in business within the jurisdiction, or upon gross income from sources within the jurisdiction if the non-resident alien or foreign corporation is not engaged in business within the jurisdiction. The fact that all or part of the income subject to tax under this scheme is also taxed by another taxing jurisdiction does not relieve the taxpayer of liability except as the code itself may provide. 8 Mertens, Income Tax § 45.03 (1964 rev.).

As we have said, the administrative rulings cited by the Department to Congress in 1958 held that in enacting section 31 of the Organic Act of Guam, and the comparable statutory provisions relating to the Virgin Islands, Congress intended that the separate tax systems provided for each territory should follow this same basic structure.

Thus in the earliest of the administrative rulings cited, a 1935 opinion of the Bureau of Internal Revenue, I.T. 2946 (Cum.Bull. XIV–2, 109 (1935)), the Bureau held that, from the point of view of the Virgin Islands income tax, citizens of the United States residing in the Virgin Islands were to be treated as resident aliens, and citizens of the United States not residing in the Islands were to be treated as non-resident aliens. Resident aliens were to be taxed by the Virgin Islands on income from all sources, including sources within the United States, subject only to such exemptions and credits as the Virgin Islands tax code itself provided. The Bureau further held that, from the point of view of the United States income tax, a citizen of the United States, wherever resident, was required to file a return in this country on income from whatever sources,

with such exceptions and credits as the United States tax code might provide.[7]

The Department also cited the opinion in I.T. 4046 (1951–1 Cum.Bull. 57 (1951)), in which the Bureau stated with reference to I.T. 2946: "It is believed that the same principles are applicable to Guam * * *." (at 58–59). "The effect of section 31 of the Organic Act of Guam," the Bureau said, "is to set up a separate tax system for Guam, which is a duplicate of the federal income tax system." (at 58).

Other administrative rulings cited by the Department reflected the view that citizens of Guam residing in Guam are non-resident aliens for the purpose of the United States income tax, Rev.Rul. 56, 1953–1 Cum.Bull. 303; that citizens of the United States residing in the United States are non-resident aliens for the purpose of the Guam territorial income tax, Rev.Rul. 8, 1953–1 Cum.Bull. 300, 301; and that the United States income tax and the Guam territorial income tax are to be imposed on this basis in accordance with the general structure of each tax system outlined above, Rev. Rul. 55–184, 1955–1 Cum.Bull. 500.

■ It would seem clear that the same approach must be taken in dealing with corporate taxpayers—a corporation organized in Guam is "domestic" for the purposes of the Guam income tax, a corporation organized elsewhere is "for-

eign."[8] As we have seen, within the basic structure of the Code, the alternative to treating a corporation organized in one of the United States as "foreign" to Guam is to treat it as a domestic Guam corporation. The tax provided by section 881 of the Code does not apply to corporations domestic to Guam, which must pay the Guam territorial income tax upon all of their net income, wherever earned. 26 U.S.C. § 11 (1964). To avoid this result would require still further modification of the basic substantive provisions of the statute, a course we think denied to us, just as we have held it to be denied to tax officials of Guam exercising their admitted power to promulgate appropriate tax regulations. Guam v. Koster, 362 F.2d 248 (9th Cir. 1966).[9]

■ The general conclusion that we draw from the available evidence, then, is that Congress intended that Guam should apply the Internal Revenue Code (with those deletions prescribed by section 1421i(d) (1)) to persons and income within its territory just as the United States applies the Code to persons and income within *its* territory.

■ The interpretative omissions and substitutions of language authorized by section 1421i(d) (1) and (e) are those which are necessary to effectuate this intention. We may not adopt a construction inconsistent with it, as we did in *Atkins-Kroll,* simply because we consid-

7. The statute interpreted in I.T. 2946 (Naval Appropriations Act of July 12, 1921, 42 Stat. 122) provided, in language identical to that of § 31 of the Organic Act of Guam, that the income tax laws in force in the United States should likewise be in force in the Virgin Islands. The Bureau stated that as a result of this statutory provision the United States and the Virgin Islands "are separate and distinct taxing jurisdictions although their income tax laws arise from an identical statute applicable to each," and that to give the Internal Revenue Code the proper effect in the Islands the words "Virgin Islands" were to be substituted in the Code for "United States." The Bureau then held as indicated in the body.

8. Rev.Rul. 56–616, 1956–2 Cum.Bull. 589, not cited to the Congress, announced that

a Guam corporation is to be treated as a "foreign" corporation for the purposes of the United States income tax.

We also note that this approach to the classification and tax treatment of non-resident "aliens" and "foreign" corporations for the purpose of a territorial income tax which seems implicit in § 31, was expressly required by § 261 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, applicable to Puerto Rico and the Philippine Islands.

9. We held in *Koster* that since the Internal Revenue Code subjects a citizen of the United States to the United States income tax upon income from whatever source derived, Guam could not by regulation limit the Guam territorial income tax on citizens of Guam to income produced in Guam.

er the result more equitable. Deviations from the intended dual structure by substantive revision of the basic scheme of the Code as applied to Guam must be left to Congress.[10]

Applying this standard, we hold that "Guam" must be substituted for "United States" in section 7701(a) (4) and the words "or of any State or Territory" in that section must be omitted because the substitution is not "manifestly otherwise required," and the omitted words are "inapplicable language," in light of Congress's purpose that the income tax code be applied by Guam in its territory as it is applied by the United States in its territory.

There is no substance in appellant's constitutional contentions.[11]

Affirmed.

10. Congress has provided an avenue of relief from combined tax burdens imposed upon dividend income paid to foreign parent corporations through the medium of the treaty-making power. 8 Mertens, Income Tax § 45.69 (1964 rev.). Congress could as readily provide relief appropriate to Guam without distorting the basic taxing structure. We cannot.

11. Limitations imposed upon state legislative powers by the Commerce clause are obviously inapplicable to the power of Congress to legislate with respect to territories of the United States. See Rivera v. Buscaglia, 146 F.2d 461 (1st Cir. 1944). Appellant's due process arguments are equally wide of the mark.