CHICAGO BRIDGE & IRON COMPANY Ltd., Appellant

v.

REUBEN B. WHEATLEY, Commissioner of Finance, Appellee

No. 17,838

United States Court of Appeals

Third Circuit

Argued January 28, 1970

Decided July 13, 1970

*See, also, 7 V.I. 126*

Edward W. Rothe, Esq. (Hopkins, Sutter, Owen, Mulroy, Wentz & Davis), Chicago, Illinois, *for appellant*

Peter J. O'Dea, Esq., First Assistant Attorney General, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before HASTIE, *Chief Judge*, and GANEY and STAHL,[*] *Circuit Judges*

## OPINION OF THE COURT

HASTIE, *Chief Judge*

The basic issue presented on this appeal is whether a Delaware corporation is entitled to use the Western Hemisphere trade corporation deduction to reduce its income tax liability to the Virgin Islands.

---

[*] Judge Stahl heard the argument and participated in the consideration of this appeal but died before decision.

The Internal Revenue Code of the United States was made applicable in the Virgin Islands by the Naval Service Appropriation Act of 1922, 48 U.S.C. § 1397 (1964):

"The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands."

Beyond merely extending the geographic coverage of the Internal Revenue Code, this statute in effect created a separate territorial income tax measured by that Code and to be collected by the Government of the Virgin Islands. Dudley v. Commissioner, 3d Cir. 1958, 3 V.I. 471, 258 F.2d 182, 185.

▆▆▆▆ The Virgin Islands has jurisdiction to tax corporations of mainland domicile on income from sources within the Virgin Islands. At the same time the United States has jurisdiction to tax the income of such corporations regardless of source, and does so. Double taxation is avoided by granting a foreign tax credit to such corporations for taxes paid to the Virgin Islands. See I.T. 2946, XIV-2 Cum. Bull. 109, 110 (1935).[1]

▆▆▆▆ Section 922 of the Internal Revenue Code of 1954 provides a special deduction for "Western Hemisphere trade corporations" in computing taxable income, and section 921 defines corporations entitled to the special deduction:

---

[1] In 1954, Congress provided that permanent residents of the Virgin Islands (including Virgin Islands corporations) must return and pay taxes to the Virgin Islands on income from all sources. Revised Organic Act of the Virgin Islands § 28(a), 48 U.S.C. § 1642 (1964). However, corporations domiciled on the mainland and United States citizens not residing permanently in the Virgin Islands must still file two tax returns, one reporting and paying taxes to the Virgin Islands on Virgin Islands income, and the other reporting and paying taxes to the United States on income from all sources, with a credit for taxes paid to the Virgin Islands.

"For purposes of this subtitle, the term 'Western Hemisphere trade corporation' means a domestic corporation all of whose business (other than incidental purchases) is done in any country or countries in North, Central, or South America, or in the West Indies, and which satisfies the following conditions:

(1) if 95 percent or more of the gross income of such domestic corporation for the 3-year period immediately preceding the close of the taxable year (or for such part of such period during which the corporation was in existence) was derived from sources without the United States; and

(2) if 90 percent or more of its gross income for such period or such part thereof was derived from the active conduct of a trade or business.

. . ."

The Virgin Islands are considered to be a "Country . . . in the West Indies" and a source of income "without the United States" in the administration of this special provision. Rev. Rul. 55–105, 1955-1 Cum. Bull. 94; I.T. 4067, 1951-2 Cum. Bull. 55–56. In addition, section 7701(a)(4) of the 1954 Code defines a "domestic" corporation as one "created or organized in the United States or under the law of the United States or of any State or Territory." But Virgin Islands corporations are not "domestic" under the definition in section 7701(a)(4) because the term "Territory" in that section includes only incorporated territories, such as Alaska and Hawaii before they were admitted to the Union. See Treas. Reg. § 301.7701-5 (1960). The Virgin Islands are an unincorporated territory, 48 U.S.C. § 1541(a) (1964), and a Virgin Islands corporation is treated as "foreign" for purposes of the United States income tax. See Rev. Rul. 56-616, 1956-2 Cum. Bull. 589–90.

It is undisputed, therefore, that the taxpayer would be entitled to the special deduction of section 922 on its United States income tax return, since the taxpayer is a domestic corporation of the United States and satisfies

the conditions of clauses (1) and (2) of section 921 for the taxable year at issue. However, the Commissioner of Finance disallowed the Western Hemisphere trade corporation deduction claimed in the taxpayer's Virgin Islands income tax return and determined a deficiency on the ground that the deduction is not allowable in a Virgin Islands return to corporations that are not "domestic" in relation to that taxing authority. On the taxpayer's suit for redetermination, the district court reached the same result as the Commissioner by reading a definition of "domestic" found in the Virgin Islands Code, 33 V.I.C. § 1931(2) (1967), into the Internal Revenue Code's definition of a Western Hemisphere trade corporation. The local statute defines "domestic" when applied to a corporation to mean "created or organized in the Virgin Islands." Relying upon this definition, the district court ruled that only Virgin Islands corporations, and not mainland corporations like the taxpayer, are entitled to the special deduction allowed by section 922 when computing their income tax liability to the Virgin Islands. Chicago Bridge & Iron Co. v. Wheatley, D.V.I. 1969, 7 V.I. 126, 295 F.Supp. 240, 242.

We think that the district court erred in relying on the definition of "domestic" in section 1931 of the Virgin Islands Code. Congress has not empowered the Virgin Islands Legislature to redefine terms in the Internal Revenue Code, and in section 1931 that legislature has not purported to do so. Indeed, the definitions in that section apply by their own terms only "[w]hen used in this subtitle," namely, Subtitle 1 of Title 33. Of course, the substantive provisions of the Internal Revenue Code of 1954 are not incorporated into Subtitle 1 of Title 33 or any other part of the Virgin Islands Code.[2] Thus, the perti-

---

[2] Subtitle 1 of Title 33 contains two parts. Part I sets forth the substantive provisions of certain locally imposed taxes, such as inheritance, excise,

nent inquiry is whether, absent any authoritative local legislation, the Commissioner's construction of "domestic" in section 921 of the Internal Revenue Code as meaning only Virgin Islands corporations is required to give proper effect to the Western Hemisphere trade corporation deduction as part of the Virgin Islands income tax law.

■ Both the federal tax administrators and the Congress have recognized that implementation of the Internal Revenue Code as a separate taxing statute in the Virgin Islands requires some substitution of language. In a ruling published in 1935, the Bureau of Internal Revenue noted that in construing the taxing statute applicable in the Virgin Islands, "it will, of course, be necessary in some sections of the law to substitute the words 'Virgin Islands' for the words 'United States,' in order to give the law proper effect in those islands." I.T. 2946, XIV-2 Cum. Bull. 109, 110 (1935).[3]

The Internal Revenue Code was enacted as the income tax law of Guam by section 31 of the Organic Act of Guam in language identical in all relevant respects to the statute that had established what has come to be called the "mirror system" of taxation in the Virgin Islands.[4] The equivalent mirror system of taxation in Guam has been the subject of congressional and judicial interpretations that

---

gasoline, stamp, and production taxes. Part II comprises procedural and administrative provisions applicable to all Virgin Islands taxes, including the United States income tax. As pointed out in the text at the beginning of this opinion, the substantive provisions of the Internal Revenue Code were made applicable in the Virgin Islands by congressional enactment in the Naval Service Appropriation Act of 1922, 48 U.S.C. § 1397 (1964).

[3] The Senate Report on the 1960 amendments adding section 934 to the Internal Revenue Code of 1954 described this dual or mirror system of taxation applicable in the Virgin Islands in similar terms:

"For many years . . . the income tax laws of the United States have been applicable to the Virgin Islands as if these laws had been separately enacted for the Virgin Islands, substituting the name 'Virgin Islands' for references to the United States in the income tax laws."

S. Rep. No. 1767, 86th Cong., 2d Sess. 2 (1960), 1960-2 Cum. Bull. 829, 830.

[4] Compare 48 U.S.C. § 142i(a) (1964) with 48 U.S.C. § 1397 (1964).

indicate the extent to which the Internal Revenue Code should be modified in its application as a separate territorial income tax. The decisions construing the original Guamanian tax statute agreed that "[t]he tax to be paid ordinarily is measured by the amount of income tax the taxpayer would be required to pay to the United States of America if the taxpayer were residing in the continental United States," and that the literal terms of the Internal Revenue Code should be modified only by "those non-substantive changes in nomenclature as are necessary to avoid confusion as to the taxing jurisdiction involved."[5]

In 1958 Congress amended section 31 of the Organic Act of Guam to clarify the separate territorial income tax structure. In an explanatory note accompanying its recommendation that the amendments to section 31 be approved, the Committee on Interior and Insular Affairs recognized the similarity of the income tax structures of Guam and the Virgin Islands and indicated that the amendments would be in accordance with a number of authoritative pronouncements, among them the ruling of the Bureau of Internal Revenue that the same principles of substitution were applicable to the revenue laws of both possessions.[6] The amendments limited incorporation of the Internal Revenue Code in Guam to those provisions "not manifestly inapplicable or incompatible" with a separate territorial income tax, and provided for the substitution of "Guam" for "United States" and "other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section." 48 U.S.C. § 1421i(d)(1) & (e)

---

[5] Wilson v. Kennedy, D. Guam 1954, 123 F.Supp. 156, 160, aff'd, 9th Cir. 1956, 232 F.2d 153. See Pacific Wholesalers, Inc. v. Managerich, D. Guam 1957, 147 F.Supp. 867, 868; Guam v. Kaanehe, D. Guam 1954, 124 F.Supp. 15, 17; Laguana v. Ansell, D. Guam 1952, 102 F.Supp. 919, 921, aff'd per curiam, 9th Cir. 1954, 212 F.2d 207, cert. denied, 348 U.S. 830.

[6] 2 U.S. Code Cong. & Ad. News, 85th Cong., 2d Sess. 3651–53 (1958), citing I.T. 4046, 1951-1 Cum. Bull. 57.

(1964). However, the apparent latitude for interpretation allowed by the amended statute has not changed the basic conception that "the purpose of the amended statute was to give Guam a separate, integral tax system, which would duplicate the United States' tax system in all substantive particulars." Sayre & Co. v. Riddell, 9th Cir. 1968, 395 F.2d 407, 410.

The principles by which the mirror system of taxation should be applied have received instructive exemplification in decisions interpreting the amended Guamanian tax statute. When the tax officials of Guam passed regulations purporting to disallow business losses in the United States as deductions on Guamanian income tax returns, and attempting to redefine gross income to include only income earned in Guam, the regulations were held invalid as modifying the substance of Internal Revenue Code provisions that were not "manifestly inapplicable or incompatible" with a separate tax structure. Guam v. Koster, 9th Cir. 1966, 362 F.2d 248. On the other hand, in Sayre & Co. v. Riddell, supra, it was held that Guam properly treated a United States corporation as foreign for the purpose of the withholding tax on payments to foreign corporations, just as the United States treats territorial corporations as "foreign" for the United States tax purposes.[7] Substitutions and omissions were made in the withholding provisions of Int. Rev. Code of 1954, § 1442, on the theory that "Guam should apply the Internal Revenue Code . . . to persons and income within its territory just as the United States applies the Code to persons and income within *its* territory." 395 F.2d at 412.

We apply these concepts to the present problem. The Western Hemisphere trade corporation deduction is a supposedly equalizing economic benefit granted by the

[7] See Rev. Rul. 56-616, 1956-2 Cum. Bull. 589–90.

United States to American corporations doing most of their business outside the United States in the Western Hemisphere. The stated purpose of the deduction was to alleviate the competitive disadvantage thought to be imposed by the surtax of the Revenue Act of 1942 on American corporations trading in the Western Hemisphere.[8] In the light of this purpose, the substitutions urged by the Virgin Islands government would substantially alter and distort the Western Hemisphere trade corporation deduction.

■ If the United States were the only jurisdiction taxing a mainland corporation deriving 95% of its income from Virgin Islands business, the corporation would be entitled to the Western Hemisphere trade corporation deduction. For, as we already have pointed out, under section 921 the corporation would be "domestic" and its Virgin Islands income would be from "sources without the United States." Therefore, substantive equality of treatment in determining the deduction under the Virgin Islands mirror system requires that the quoted language be given the same meaning. Such identity of treatment imposes no unfairness and creates no distortion. The scheme of the statute is to impose a tax obligation to the Virgin Islands equivalent to what the United States would collect on the same income, but for the mirror system. Cf. Sayre & Co. v. Riddell, supra at 410–11. To disallow the deduction as the Virgin Islands has done is to claim for the territory a larger tax than the United States would have collected in the absence of the mirror system.

Moreover, if the Virgin Islands can construe "domestic corporation" as used in section 921 to mean a Virgin Islands corporation, but not a mainland corporation, an unwarranted distortion will result in the application of the

---

[8] See S. Rep. No. 1631, 77th Cong., 2d Sess. 32 (1942), 1942-2 Cum. Bull. 532; 88 Cong. Rec. 7795 (1942).

Western Hemisphere trade corporation deduction. If the regulation treating the Virgin Islands as a source of income outside of the United States is applied, then a Virgin Islands corporation doing all of its business at home can claim the deduction in its Virgin Islands return, the only return it is required to make,[9] while a mainland corporation similarly engaged in the Virgin Islands is denied that privilege. The appellee recognizes that such a distortion must be avoided, so it urges that in determining what local corporations will qualify for the Western Hemisphere trade corporation deduction, the Virgin Islands taxing authorities should substitute the phrase "sources outside of the Virgin Islands" for the statutory phrase "sources without the United States." But that substitution would lead to something far worse. It would enable a Virgin Islands corporation doing most of its business on the mainland to qualify for a deduction intended solely to benefit business activities outside of the United States. Moreover, every business enterprise operating solely on the mainland could qualify for the Western Hemisphere trade corporation deduction merely by incorporating in the Virgin Islands.

 Essentially, the Virgin Islands government offers only one contention of social policy to justify the substantive revision of the Western Hemisphere trade corporation deduction it would impose. In an argument accepted by the district court,[10] the local government contends that because the mirror system of taxation was designed to assist the Virgin Islands in becoming financially self-supporting,[11] a Western Hemisphere trade corporation should not receive a subsidy in the form of re-

---

[9] See note 1 supra.

[10] See Chicago Bridge & Iron Co. v. Wheatley, D.V.I. 1969, 7 V.I. 126, 295 F.Supp. 240, 242–43.

[11] See Dudley v. Commissioner, 3rd Cir. 1958, 3 V.I. 471, 258 F.2d 182, 185.

duced income tax liability to the Virgin Islands. If valid, this argument would justify elimination of almost any provision of the Internal Revenue Code that enabled a taxpayer to reduce his territorial income tax. However, the Virgin Islands may not at its option effectively disallow the deductions provided in the Internal Revenue Code. See Guam v. Koster, supra. More basically, Congress has aided the Virgin Islands by giving them the same tax, not more, than the United States would otherwise collect on Virgin Islands business. We find nothing in the favorable tax treatment granted to Western Hemisphere trade corporations under section 922 of the Internal Revenue Code that is so manifestly incompatible with the concept of an equivalent separate tax imposed by the Virgin Islands as to require modifications altering the substance of the provision.[12]

The judgment of the district court will be reversed, and the case will be remanded with directions to grant the appellant's motion for judgment on the pleadings.

---

[12] Although the wisdom of the deduction has been challenged vigorously, see, e.g., Wilson, The Western Hemisphere Trade Corporation Act: The Need for Reassessment, 1968, 2 J. Law & Econ. Develop. 208, 226–29, such criticism applies equally to the deduction as part of federal and territorial tax law, and does not establish that the deduction is particularly incompatible with a separate territorial tax. We may not rewrite provisions of the territorial tax thereby opposing our judgment to that of Congress.