

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-13-2002

# Chase Manhattan Bank v. Govt of VI

Precedential or Non-Precedential: Precedential

Docket No. 01-4317

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Chase Manhattan Bank v. Govt of VI" (2002). *2002 Decisions.* Paper 492.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/492

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4317

CHASE MANHATTAN BANK, N.A.

v.

GOVERNMENT OF THE VIRGIN ISLANDS,
BUREAU OF INTERNAL REVENUE,

        Appellant

Appeal from the District Court of the Virgin Islands
Division of St. Thomas
(D.C. Civil Action No. 00-cv-00234)
District Judge: Honorable Thomas K. Moore

Argued May 13, 2002

Before: AMBRO, FUENTES and GARTH, Circuit Judg es

(Opinion filed: August 13, 2002)

        Iver A. Stridiron
        Attorney General
        Elliott McIver Davis
        Solicitor General
        Joanne E. Bozzuto (Argued)
        Special Assistant Attorney General
        Office of Attorney General of
         Virgin Islands
        Department of Justice
        48B-50C Kronprindsens Gade,
        GERS Building, 2nd Floor
        Charlotte Amalie, St. Thomas
        USVI, 00802

        Richard M. Prendergast
        Assistant Attorney General
        Office of Attorney General of
         Virgin Islands
        6040 Castle Coakley
        Christiansted, St. Croix
        USVI, 00820
         Attorneys for Appellant
        Government of the Virgin Islands

        Lawrence M. Hill, Esquire (Argued)
        Michael I. Saltzman, Esquire
        Richard A. Nessler, Esquire
        White & Case LLP

1155 Avenue of the Americas
New York, NY 10036
 Attorneys for Appellee
Chase Manhattan Bank, N.A.

2

William G. Myers III, Solicitor
U.S. Department of the Interior
David L. Atkinson
United States Attorney
Eileen J. O'Connor
Assistant Attorney General
David Carmack, Esquire
Thomas J. Sawyer, Esquire
United States Department of Justice
Tax Division
P.O. Box 502
Washington, DC 20044
 Attorneys for Amicus-Appellant
United States of America

OPINION OF THE COURT

AMBRO, Circuit Judge:

At issue in this case is the interest rate that should apply to the overpayment of income tax owed to the Virgin Islands' taxing authority. The Virgin Islands Bureau of Internal Revenue (the "VIBIR") appeals the District Court of the Virgin Islands' application of the Virgin Islands Code rate of 12%, rather than the lower federal rate. We reverse.

I. Background

The facts of this case are not contested. Chase Manhattan Bank, N.A. ("Chase") overpaid its income taxes for the years 1989, 1990, and 1991. In 1994 Chase and the VIBIR agreed that Chase was owed a refund of $3,869,888, and that the VIBIR would accordingly allow Chase a $2 million tax credit for both tax years 1994 and 1995. This amount included an interest component, calculated at the federal statutory rate. To the extent that Chase owed less than $2 million in taxes in either year, the VIBIR would either carry over the balance or remit it to Chase. Until Chase received full payment, interest would continue to accrue at "the appropriate Bureau statutory rate and method for paying interest on overpayments."

3

Chase brought suit in the District Court because it alleged that the VIBIR incorrectly calculated the interest on the overpayments using the rate specified by the Internal Revenue Code (the "IRC") of the United States rather than using the higher rate set by the Virgin Islands Code. The IRC provides that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at

the overpayment rate established under section 6621." 26 U.S.C. S 6611(a). Section 6621 fixes the interest rate on overpayments at "the Federal short-term rate . . . plus . . . 2 percentage points in the case of a corporation." 26 U.S.C. S 6621(a)(1). It further provides that "[t]o the extent that an overpayment of tax by a corporation for any taxable period . . . exceeds $10,000," the corporate rate is only "0.5 percentage point" above the federal short term rate, rather than "2 percentage points." Id. The Virgin Islands Code provides that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 12 percent per annum." 33 V.I.C. S 1251. The Virgin Islands Code defines "internal revenue tax" as"any tax imposed by this subtitle . . . and the Virgin Islands tax law." 33 V.I.C. S 1931(7). "Virgin Islands tax law" is defined as "so much of the United States Internal Revenue Code as was made applicable in the Virgin Islands by the Act of Congress entitled 'An Act making appropriations for the naval service . . . (48 U.S.C. S 1937).' " 33 V.I.C. S 1931(15).

The District Court held that only the substantive tax provisions of the IRC apply to Virgin Islands income tax law. Mem. Op. at 6. Because the Court found interest rates on taxpayers' overpayments to be nonsubstantive, it held that the Virgin Islands Code's 12% interest rate governed.

The District Court's order granting Chase's motion for summary judgment, and denying the VIBIR's cross-motion for summary judgment, was a final one. We have jurisdiction under 28 U.S.C. S 1291. Our review is plenary. Am. Med. Imaging Corp. v. St. Paul Fire & Marine Ins., 949 F.2d 690 (3d Cir. 1991).

II. Discussion

Virgin Island income tax law generally tracks U.S. federal income tax law:

4

> The income-tax laws in force in the United States of
> America and those which may hereafter be enacted
> shall be held to be likewise in force in the Virgin
> Islands of the United States, except that the proceeds
> of such taxes shall be paid into the treasuries of said
> islands.

48 U.S.C. S 1397. This relationship is known as the "mirror code" because Virgin Islands law is statutorily designed to mirror stateside law. Danbury, Inc. v. Olive, 820 F.2d 618, 620-21 (3d Cir. 1987) ("Congress create[d] a separate taxing structure for the Virgin Islands 'mirroring' the provisions of the federal tax code except as to those provisions which are incompatible with such a separate tax structure.") (citation omitted). The Virgin Islands legislature retains the power to "amend, alter, modify, or repeal any local law or ordinance . . . and to enact new laws not inconsistent with any law of the United States applicable to the Virgin Islands." 48 U.S.C. S 1574. Virgin Islands residents fulfill their U.S. tax

obligations by paying all income taxes to the Treasury of the Virgin Islands. Abramson Enters. v. Gov't of the V.I., 994 F.2d 140, 142 (3d Cir. 1993).

Cracks sometimes appear when one jurisdiction's laws mirror another's, and courts have developed three rules of construction to guide the mirroring mechanism. The simplest is the substitution principle, whereby the words "Virgin Islands" are substituted for "United States." Abramson, 994 F.2d at 142. Second, the equality principle dictates that the tax burden on individuals in the Virgin Islands be equivalent to what the United States would collect on the same income if the taxpayer resided in the United States. Id. (citing Johnson v. Quinn, 821 F.2d 212, 214 (3d Cir. 1987)). Finally, the manifest incompatibility principle requires that the IRC should not apply to Virgin Islands tax law if the result is "manifestly inapplicable or incompatible with a separate territorial income tax." Id. (quoting Chicago Bridge & Iron Co. v. Wheatley , 430 F.2d 973, 976 (3d Cir. 1970)).

The mirror code unambiguously applies "[t]he income-tax laws in force in the United States of America and those which may hereafter be enacted" to the Virgin Islands tax law. 48 U.S.C. S 1397. Because the IRC assigns to

5

overpayments of interest the federal short-term rate plus 0.5% to corporations owed payments of over $10,000, that is the rate at which Chase's interest accrues. This does not render S 1251's 12% rate void, however. The Virgin Islands legislature has the power "to enact new laws not inconsistent with any law of the United States applicable to the Virgin Islands." 48 U.S.C. S 1574. Section 1251's 12% rate applies to all "internal revenue" taxes of the Virgin Islands aside from income tax, i.e., local taxes such as property taxes, excise taxes, and inheritance taxes. 33 V.I.C. S 1251. As to overpayments of income tax, however, the mirror code calls for the federal interest rate to apply.1 26 U.S.C. S 6611(a).

The District Court's distinction between substantive and nonsubstantive law is unsupported by case law. To apply it would violate the equality principle because corporations in the Virgin Islands would be entitled to a greater overpayment than those organized within the mainland United States. But more to the point, most of our cases do not apply "nonsubstantive" tax provisions as the District Court did. Abramson, 994 F.2d at 140; Johnson, 821 F.2d at 214; Danbury, 820 F.2d at 618; Vitco, Inc. v. Government of the Virgin Islands, 560 F.2d 180 (3d Cir. 1977); HMW Indus. v. Wheatley, 504 F.2d 146 (3d Cir. 1974). The District Court relied on the language in two cases, Chicago Bridge & Iron Co. v. Wheatley, 430 F.2d 973 (3d Cir. 1970), and Dudley v. Commissioner, 258 F.2d 182 (3d Cir. 1958), but overlooked contextual differences that distinguish them from the current case.

Chicago Bridge arose from a complication with the substitution principle. Section 922 of the IRC of 1954 contained a "special deduction" for "Western Hemisphere trade corporations," a term defined as "domestic" corporations all of whose business is done in several countries, including the West Indies. 430 F.2d at 974. A mainland corporation doing business in the Virgin Islands should therefore qualify for the deduction. The taxpayer in

_____

1. Additionally, the 1994 agreement between Chase and the VIBIR itself anticipated this result. The interest component built into its $3,869,888 refund amount was calculated at the federal rate, not at 12%.

Chicago Bridge was such a mainland corporation. However, the Commissioner of Finance for the Virgin Islands applied S 922's term "domestic" literally and disallowed a Western Hemisphere special deduction to the corporation in its Virgin Islands tax return, reasoning that the taxpayer was not "a domestic corporation" to the Virgin Islands because it was a mainland corporation. "Relying upon this definition, the district court ruled that only Virgin Islands corporations, and not mainland corporations like the taxpayer, are entitled to the special deduction allowed by section 922 when computing their income tax liability to the Virgin Islands." Id. at 975.

We applied the equality principle to resolve the issue, and concluded that the statute allowed the corporate taxpayer's deduction. In holding this, we observed that "the literal terms of the Internal Revenue Code should be modified only by those nonsubstantive changes in nomenclature as are necessary to avoid confusion as to the taxing jurisdiction involved." Id. at 976 (emphasis added) (citation omitted). Second, we cited Sayre & Co. v. Riddell, 395 F.2d 407, 410 (9th Cir. 1968), a similar Ninth Circuit case involving Guam, and observed that although changes in nomenclature were appropriate "where necessary to effect the intent" of the law, "the purpose of the amended statute was to give Guam a separate, integral tax system, which would duplicate the United States' tax system in all substantive particulars." Chicago Bridge , 430 F.2d 976 (emphasis added). Third, we stated in a footnote that "the substantive provisions of the Internal Revenue Code were made applicable in the Virgin Islands by congressional enactment in the Naval Service Appropriation Act of 1922." 430 F.2d at 975 n.2 (emphasis added).

Chicago Bridge's language must be read in context. The opinion juxtaposes "substantive" provisions with "nonsubstantive changes in nomenclature . . . necessary to avoid confusion as to the taxing jurisdiction  involved." 430 F.2d at 976 (emphasis added). It nowhere suggests that only substantive, and not procedural, income tax law is to be mirrored. If anything, it equates nonsubstantive with jurisdictional, using the term "substantive" to ensure that the "intent" of federal law is carried over into the Virgin

Islands system by treating the mainland corporation as if it were filing in the United States.

In Dudley, the taxpayer received a notice of deficiency that informed him that he could appeal to the District Court of the Virgin Islands. 258 F.2d at 183. However, he filed a petition for redetermination in the Tax Court of the United States. We concluded that the Tax Court has limited jurisdiction, and is authorized only to hear petitions for redetermination after the Secretary of the Treasury of the United States (or his or her delegate) issues a deficiency notice. Id. Because it was the Head of the Tax Division of the Department of Finance of the Government of the Virgin Islands (not a delegate of the U.S. Secretary of the Treasury) that issued the deficiency notice, the Tax Court had no jurisdiction. Id. at 184.

The Dudley Court cited S 3811 of the then extant IRC of 1939, which provided:

> All provisions of the laws of the United States applicable to the administration, collection, and enforcement of the tax imposed by subchapter E of chapter 1 (including the provisions relating to The Tax Court of the United States) . . . shall, in respect to such tax, extend to and be applicable in the Virgin Islands in the same manner and to the same extent as if the Virgin Islands were a State, and as if the term 'United States' when used in a geographical sense included the Virgin Islands.

258 F.2d at 186-87. We concluded: "It thus appears from section 3811 that Congress understood that the provisions of the internal revenue laws of the United States relating to tax administration and enforcement, especially those relating to the Tax Court, were without application to the Virgin Islands." 258 F.2d at 187. The District Court cited this last sentence, omitting the phrase about the Tax Court, to argue that we articulated the nonsubstantive/substantive distinction, and only apply the mirror code to substantive income tax provisions. However, the reference in Dudley to "provisions of the internal revenue laws of the United States relating to tax administration and enforcement" described the

jurisdictional problem of appeal to the incorrect court. It did not announce a wholesale division between substantive and procedural law. Like Chicago Bridge, at heart Dudley dealt with jurisdictional confusion.

In this context, the District Court's reading of our case law missed the mark. As detailed above, it isolated stray phrases in two opinions to infer a distinction between

substantive and nonsubstantive provisions. But, as noted, Chicago Bridge counterposed substantive tax law provisions to mere changes in nomenclature to avoid jurisdictional confusion. 430 F.2d at 975-76. Dudley held that on the particular jurisdictional issue--which was the proper court of appeal--Virgin Islands law was applicable. 258 F.2d at 187. We have never enunciated a rule that only substantive U.S. income tax law is mirrored in the tax laws of the Virgin Islands. The Virgin Islands Code is to mirror the IRC, except where to mirror literally would lead to jurisdictional confusion, manifest incompatibility, or a violation of the equality principle. None is applicable here.

Furthermore, to adopt a distinction between substantive and nonsubstantive in the rarefied and rule-based world of income tax law simply invites confusion. To parse substance from procedure in this context is a chimeral endeavor. The law does not require such feats of us. 2

*****

No distinction exists in our case law between substantive and nonsubstantive provisions of the U.S. income tax law in the context of the mirror code, which dictates that we apply IRC S 6621's interest rate for overpayments rather than the 12% rate of the Virgin Islands Code. Accordingly, we reverse the District Court's order granting Chase's motion for summary judgment and denying the VIBIR's

_____

2. Because we hold that it is the federal rate that governs, we need not reach the issue of whether Chase breached its 1994 agreement with the VIBIR. Chase contends that the agreement was not a closing agreement (and therefore that it could not be in breach). It also correctly points out that the VIBIR did not raise the issue of the agreement before the District Court, so we should not consider it. See United States v. Gilchrist, 215 F.3d 333, 339 (3d Cir. 2000).

9

cross-motion, and remand with instructions to enter summary judgment in favor of the VIBIR.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

10