**VITCO, INC., Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS**
**and**
**REUBEN B. WHEATLEY, Commissioner of Finance**

No. 77-1065

United States Court of Appeals

Third Circuit

Argued April 27, 1977

Filed July 26, 1977

---

JOHN A. CORRY, ESQ. (DAVIS, POLK & WARDWELL), New York, New York, *for appellant*

PAUL B. KERTMAN, ESQ., Deputy Assistant Attorney General (Office of the Attorney General), Christiansted, St. Croix, V.I., *for appellee*

Before VAN DUSEN, WEIS and GARTH, *Circuit Judges*

## OPINION OF THE COURT

WEIS, *Circuit Judge*

 One may argue that the mirror system of taxation is not always the fairest of them all, but it does reflect the congressional intent to implement some degree of uniformity. In this appeal, we conclude that not only must statutory language be transposed but so must authorized implementing regulations as well. Accordingly, we hold that a Virgin Islands corporation must pay its tax obligations on all of its income to the Virgin Islands despite minimal contacts there. In addition, the withholding provisions relating to dividends paid to a mainland corporation do not apply since a similar provision in the United States Code does not cover income paid to a Virgin Islands corporation by a United States corporation.

Appellant Vitco is a corporation chartered in the Virgin Islands and is a wholly owned subsidiary of Chase Instruments Corporation, a New York corporation. Vitco's business consists primarily of leasing machinery and equipment, some of which was located in the Virgin Islands

69

and some in the continental United States during the 1970–1972 period. Most of the company's revenues were attributable to the equipment located in the continental United States, and it was there that Vitco physically received its machinery rental and interest income from all sources. Having neither an office nor any employees in the Virgin Islands, Vitco maintained its place of business in Lindenhurst, New Jersey, in the same city as its parent. On its tax returns, however, Vitco lists its address as "P.O. Box 2488, St. Thomas, Virgin Islands."

For the years 1970, 1971 and 1972, Vitco submitted corporate tax returns and paid the amounts due to the United States government. The company also filed income tax returns with the Commissioner of Finance of the Virgin Islands for the same years, claiming as foreign tax credits the amounts paid to the United States.

The respondent Commissioner of Finance issued a deficiency notice, asserting that Vitco's taxes should have been paid to the Virgin Islands rather than the United States. Further, the Commissioner sought an additional amount allegedly due the Virgin Islands—a 30% "withholding" tax on the gross dividends paid by Vitco to its parent, Chase Instruments Corporation. The Virgin Islands based this latter assessment upon § 1442 of the Internal Revenue Code, 26 U.S.C. § 1442, which provides for the withholding of a 30% tax upon what might be termed "passive" income paid to a foreign corporation. Since Chase is a United States Corporation, it is considered as "foreign" for Virgin Islands tax purposes.

The district court, agreeing with the Commissioner, determined that Vitco was required to pay taxes on its entire income to the Virgin Islands, rather than to the United States, and to withhold taxes due on the dividends payable to Chase.

As we have explained in the earlier cases, Congress

70

neither passed a separate income tax law for the Virgin Islands nor permitted its legislature to do so. Instead, Congress provided that the provisions of United States income tax law should be used in the tax code of the Virgin Islands with necessary nomenclature changes to make them effective, that is, "Virgin Islands" should be substituted for "United States" whenever appropriate. The United States and the Virgin Islands are two separate and distinct taxing authorities, and the revenue due the Virgin Islands is paid into its treasury. This resulted in what has been called the "mirror system" of taxation. For a history and general description of its operation, see Dudley v. Commissioner, 3 V.I. 685, 258 F.2d 182 (3d Cir. 1958); Chicago Bridge and Iron Co. v. Wheatley, 7 V.I. 555, 430 F.2d 973 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971); and Great Cruz Bay, Inc., St. John, Virgin Islands v. Wheatley, 11 V.I. 189, 495 F.2d 301 (3d Cir. 1974).

■ As a matter of policy, Congress determined that the Virgin Islands should collect the tax on all income of Virgin Islands residents, including any received from sources in the United States. 1954 Revised Organic Act of the Virgin Islands, § 28(a), 48 U.S.C. § 1642. The statute provides:

". . . the term 'inhabitants of the Virgin Islands' as used in this section shall include all persons whose permanent residence is in the Virgin Islands, and such persons shall satisfy their income tax obligations under applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the treasury of the Virgin Islands . . . ."

"Inhabitants" includes corporations as well as natural persons, Chicago Bridge and Iron Co. v. Wheatley, supra.

The legislative history of the Act is illuminating. The Senate draft of the bill stated that:

"United States *citizens* residing in the Virgin Islands *may* satisfy their United States income tax obligations by paying their tax to the Virgin Islands, regardless of the source of their income." [emphasis added][1]

In a letter to the Senate Committee, the Assistant Secretary of the Interior said:

"The Department bill, like the present organic act, provides that proceeds of customs duties, United States income taxes, any taxes levied by Congress on *inhabitants* of the Virgin Islands, and the proceeds of certain fees shall be covered into the Virgin Islands treasury. In addition, the Department bill would provide for the return to the Virgin Islands treasury of proceeds of United States internal-revenue taxes collected on articles produced in the Virgin Islands and transported to the United States. The chamber of commerce bill contains the same provisions, but in addition, it would also provide that the proceeds of any local income tax enacted in lieu of the United States income tax shall be covered into the Territorial treasury, and that a resident of the Virgin Islands may satisfy his income-tax obligation under applicable tax laws of the United States by paying his tax on income derived from all sources, both within and outside the Virgin Islands, into the treasury of the Virgin Islands."[2] [emphasis added]

When the bill went to a Conference Committee, certain significant changes were made:

"This section further provides that all persons whose permanent residence is in the Virgin Islands *shall* satisfy their United States income-tax obligations by paying their tax to the Virgin Islands regardless of their source of income. The conferees agreed to accept the wording of the House version that the term 'inhabitants of the Virgin Islands' shall include all persons whose permanent residence is in the Virgin Islands in lieu of the Senate stipulation that 'inhabitants of the Virgin Islands' shall include all citizens of the United States whose permanent residence is in the United States."[3] [emphasis added]

Thus, the Senate agreed that the 1954 Act should apply to

---

[1] U.S. Code Cong. & Admin. News, p. 2595, (1954).

[2] Id. 2597, 2600.

[3] Id. 2625.

"persons" as opposed to "citizens," and that they "shall" pay the taxes to the Virgin Islands, rather than "may."

The first issue presented for review is whether the appellant, not having employees, bank accounts, or an office in the Virgin Islands, but being chartered and maintaining a post office address there, is included as "a permanent resident" within the phrase, "inhabitant of the Virgin Islands." We conclude that for tax purposes it is.

It is important to realize that we are concerned, not with concepts of jurisdiction to adjudicate, forum non conveniens, venue, or service of process, but rather with the power to tax. Precedents bearing on other areas of the law are not necessarily controlling, particularly in this situation where Congress has authority to tax both United States and Virgin Islands corporations.

A basic premise is that the state of incorporation does have the power to tax the income of a corporation chartered by it, even if the company owns no property within the state, so long as interstate or foreign commerce is not hampered. No such limitations are asserted here. 14 W. Fletcher, Cyclopedia Corporations §§ 6887, 6970.1 (1975); 2 T. Cooley, Taxation § 456 (4th ed); cf. Cream of Wheat Co. v. Grand Forks, 253 U.S. 325 (1920); Shaffer v. Carter, 252 U.S. 37 (1920); U.S. Glue Co. v. Oak Creek, 247 U.S. 321 (1918). Definitions in the Internal Revenue Code are also instructive. 26 U.S.C. § 7701 categorizes corporations as "domestic and foreign."

"(4) Domestic—The term 'domestic' when applied to a corporation . . . means created or organized in the United States or under the law of the United States or of any state . . . .

"(5) Foreign—The term 'foreign' when applied to a corporation . . . means a corporation . . . which is not domestic."

Treasury Regulation 26 C.F.R. § 301.7701-5 states in part:

73

"A domestic corporation is a resident corporation even though it does no business and owns no property in the United States."

Further support is found in § 11(a) of the Code, 26 U.S.C. § 11(a) and Treas. Reg. § 1.11-1(a):

"It is immaterial that a domestic corporation . . . may derive no income from sources within the United States."

In Chicago Bridge and Iron Co. v. Wheatley, supra, we held that Virgin Islands corporations are not United States domestic corporations but are considered foreign corporations for purposes of the Internal Revenue Code. See also Rev. Rul. 56-616, 1956-2 Cum. Bull. 589. Using the mirror technique, therefore, we may transpose the language in the statute and treasury regulations to provide that a corporation chartered in the Virgin Islands is a domestic corporation as to that jurisdiction even though it does no business and owns no property in the Islands.

The Internal Revenue Code demonstrates an intention to tax a corporation which has been chartered by the United States/Virgin Islands despite the fact that it does no business and owns no property in the United States Virgin Islands. Consistent with this statutory intent, therefore, § 28(a) of the Revised Organic Act must be interpreted to include as a "permanent resident" and therefore an "inhabitant," a corporation chartered by the Virgin Islands and to subject its income from all sources to tax by the Virgin Islands. We conclude, therefore, that Vitco is liable to pay tax on all of its income to the Virgin Islands.[4]

The second issue confronting us is whether Vitco should have withheld the 30% tax on the dividends payable to Chase. In this connection, we must give some consideration to Chase's status since the claim is that its dividend income

---

[4] In light of our conclusion, we need not consider the applicability of 26 U.S.C. § 906 (foreign tax credit) since under § 28(a) of the Revised Organic Act, Vitco's tax liability is to the Virgin Islands, not the United States. See Dudley v. Commissioner, supra; Great Cruz Bay, Inc. v. Wheatley, supra.

is subject to the tax under § 881, although Vitco has the duty to withhold under § 1442.

26 U.S.C. § 1442 provides for withholding of a 30% tax on the gross amount of specified income received by foreign corporations from sources within the United States. The income affected includes interest and dividends, among other forms.[5] Using the mirror technique, the statute, standing alone, would appear to authorize the Virgin Islands to require Vitco, a Virgin Islands source, to withhold 30% of the dividends payable to Chase, a foreign corporation. However, Treas. Reg. § 1.1441-4(d) makes special provision for inhabitants of the Virgin Islands. It reads:

*"Inhabitants of Virgin Islands—*

(1) *Allowance of exemption. No withholding is required under* § *1.1441-1 upon any item of income paid to any person* who at the time of payment reasonably *expects to satisfy his income tax obligations* with respect to that item *under* § *28(a) of the Revised Organic Act* of the Virgin Islands (48 U.S.C. § 1642). That section provides that all persons whose permanent residence is in the Virgin Islands 'shall satisfy their income tax obligations under applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the Treasury of the Virgin Islands.' For the purpose of this paragraph the term 'person' shall include an individual, partnership, and corporation."[6] (emphasis supplied)

Thus, while the statute facially would allow the 30% tax on dividends received by a Virgin Islands corporation from United States sources to be withheld, the regulation provides a special exemption which negates the apparent

---

[5] Section 1442 refers to the type of income listed in Section 1441(b) which reads as follows:

"(b) Income items.—The items of income referred to in subsection (a) are interest, dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income . . . ."

[6] Although this regulation was promulgated under 26 U.S.C. § 1441, it also applies to withholding under 26 U.S.C. § 1442. See 26 C.F.R. §§ 1.1442-1, 1-1441-1.

effect of the statute. Ordinarily, regulations may not have this effect, but in this instance the regulation is in harmony with the congressional intent underlying the Revised Organic Act of the Virgin Islands—an Act which is effective as if it had been enacted subsequent to the Internal Revenue Code, 26 U.S.C. § 7651. We hold, therefore, that the regulation is a valid application of the statute and, thus, there is no withholding on dividends paid by a United States domestic corporation to a Virgin Islands (foreign) corporation. Therefore, if the regulation as well as the underlying statute is mirrored, there can be no withholding on dividend income paid by a Virgin Islands corporation to a United States (foreign) corporation.

The Commissioner contends that (1) the mirroring technique does not provide for a two-way substitution, i.e., "Virgin Islands" may be substituted for "United States," but not *vice versa*, and (2) the result would be contrary to congressional intention. We are unable to accept either argument. The treasury regulation modifying the thrust of the statute must be mirrored as well as the statute itself; otherwise, there would not be a true reflection. Moreover, the Commissioner's "one-way" mirroring technique is simply contrary to Congress' understanding of this technique. An illustration is provided by legislation enacted for Guam. Though far removed geographically, Guam encountered a problem quite close to the one at hand, and the resolution is instructive.

In Sayre and Company v. Riddell, 395 F.2d 407 (9th Cir. 1968), the Court of Appeals for the Ninth Circuit determined that under § 881 as mirrored, Guam could impose the 30% tax on interest received by a Hawaiian corporation (considered a United States corporation for this tax purpose) from a Guam sole proprietorship. Although under this construction the United States corporation could, in some circumstances, pay a greater tax on

the interest than if the same amount had been derived from a United States source, the court noted that Congress could readily provide relief appropriate to Guam without distorting the basic tax structure.

Congress accepted the suggestion and, in 1972, amended the Internal Revenue Code to prevent Guam from taxing a United States corporation's "passive" income or withholding such tax. It accomplished this result not by amending the Organic Act of Guam, but by amending the United States Internal Revenue Code, §§ 881 and 1442. Congress added to them a provision that Guamanian corporations were not to be treated as foreign corporations. By application of the mirror system, United States corporations would be treated as domestic corporations by Guam and, hence, would not be liable for the tax. The congressional reason for the amendment was set out in the legislative history:

> "Since no deductions are allowed, the tax on this income, in many cases, is higher than the regular comporate [sic] tax would be if deductions were allowed . . . . The fact that this income now is usually taxed at a higher rate than similar income earned in the United States has had the effect of seriously retarding investments by U.S. corporations in Guam." 1972 U.S. Code Cong. & Adm. News 5402–5403.

Concluding that disparate tax treatment by Guam was undesirable, Congress changed the policy by inserting language in the United States tax law knowing that the mirror effect would change Guamanian law. Obviously, Congress intended a "two-way" mirroring.

This court recognized the desirability of tax equality in Chicago Bridge and Iron Co. v. Wheatley, supra. In discussing a deduction allowable to a United States corporation on the mainland, but not in the Virgin Islands, we said:

> "Therefore, substantive equality of treatment in determining the

deduction under the Virgin Islands mirror system requires that the quoted language be given the same meaning. Such identity of treatment imposes no unfairness and creates no distortion. The scheme of the statute is to impose a tax obligation to the Virgin Islands equivalent to what the United States would collect on the same income, but for the mirror system. Cf. Sayre & Co. v. Riddell, supra at 410–411. To disallow the deduction as the Virgin Islands has done is to claim for the territory a larger tax than the United States would have collected in the absence of the mirror system.

\* \* \*

"More basically Congress has aided the Virgin Islands by giving them the same tax, not more, than the United States would otherwise collect on Virgin Islands business." 430 F.2d at 977–978.

Guided by the equality principle for which Chicago Bridge and Iron stands, we hold that the Virgin Islands may not require withholding of the tax under § 1442. The implication of Regulation 1.1441-4(d) allows no other conclusion.[7]

Citing the argument of the losing taxpayer in Great Cruz Bay, supra, the Commissioner argues that case undermined the equality emphasis of Chicago Bridge and Iron, supra. But Great Cruz Bay is distinguishable. The exemption sought under the statutory provisions pertaining to subchapter (S), which were under consideration there, was to be narrowly construed and no treasury regulation, such as 1.1441-4(d), entered into the decision. Accordingly, there is no conflict between that case and the one sub judice.

The judgment of the district court will be affirmed insofar as it requires Vitco to pay tax on its income to the Virgin Islands; the judgment will be vacated to the extent that it found an obligation on the part of Vitco to withhold a tax on the dividends payable to Chase Instruments Corporation.

---

[7] This appeal is concerned only with the assessment against Vitco. The tax liability of Chase Instruments Corporation is not before us.