**DANBURY, INC., A Nevada Corporation, Petitioner**

v.

**ANTHONY OLIVE, Director, Bureau of Internal Revenue,
Government of the Virgin Islands, Respondent**

Civil No. 1985/269

District Court of the Virgin Islands

Div. of St. Croix

January 24, 1986

TODD NEWMAN, ESQ., St. Croix, V.I., and WILLIAM A. SELIGMANN, ESQ. (NELSON, SELIGMANN & WRIGHT, P.C.), Los Angeles, Ca., *for petitioner*

MENO W. PILIARIS, ESQ., Assistant Attorney General (Tax), (Department of Law), St. Croix, V.I., *for respondent*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

We are presented here with the prospect of the ultimate tax shelter. Can a United States corporation headquartered in the Virgin Islands avoid paying income tax to both governments? Under the facts of this case, we hold that, by the use of a loophole in the taxing statutes, it can.

## I. INTRODUCTION

Before discussing the specifics of this case, an initial introduction is needed to provide an understanding of the Court's approach to interpretation of tax statutes, as well as a further understanding of the relationship of the United States Internal Revenue Code to the Virgin Islands.

A. *Interpretation of a Tax Statute*

■■ It is a cardinal rule of statutory construction that when the language of a statute is clear, a court should look no farther than those words in interpreting the statute. E.g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 201 (1976). The United States Supreme Court has long applied this rule with equal force to matters involving the Internal Revenue Code ("I.R.C."). In Gould v. Gould, 245 U.S. 151 (1917), the Court stated:

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. (Citations omitted.)

Id. at 153.

Thus, we are constrained to interpret and enforce the tax laws as Congress has enacted them. We may neither re-write the statutes nor divine an interpretation that is inconsistent with their clear language. And this rule applies despite the most absurd results. White v. United States, 305 U.S. 281, 292 (1938); Estate of Cowser v. Commissioner of Internal Revenue, 736 F.2d 1168, 1171 (7th Cir. 1984). Accord Commonwealth Edison Company v. Montana, 453 U.S. 609, 628 (1981); United Staes v. Noall, 587 F.2d 123, 126 (2d Cir. 1978), cert. denied, 441 U.S. 923 (1979).

## B. *The Mirror Theory*

■ The Virgin Islands tax code is a mirror image of the I.R.C. The genesis of this system is the Naval Service Appropriation Act of 1922, 48 U.S.C. § 1397 (Supp. 1985) which provides:

> *Income tax laws of the United States in force; payment of proceeds; levy of surtax on all taxpayers*
>
> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands . . . .

■■ This law established the Virgin Islands as a separate tax jurisdiction. Vitco, Inc. v. Government of the Virgin Islands, 560 F.2d 180, 181–82 (3d Cir. 1977), cert. denied, 435 U.S. 980 (1978); Chicago Bridge and Iron Co. v. Wheatley, 430 F.2d 973, 975–76 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971). The I.R.C. and its regulations are adapted by substituting "Virgin Islands" in place of "United States". Vitco, supra at 181–82; Chicago Bridge, supra at 974–75. Apart from making nonsubstantive changes in nomenclature, however, the Virgin Islands has no power to enact tax laws or amend the I.R.C. Chicago Bridge, supra at 975–76.

Consequently, our analysis is limited to the provisions of the I.R.C. as amended under the mirror theory.[1]

## II. THE UNDISPUTED FACTS

The petitioner, Danbury, Inc., is an investment corporation owned equally by two shareholders, John M. Aschieris and M. Douglas. Since its creation in 1980, Danbury has acted solely as a holding company for the shareholders' investments. It was organized under the laws of Nevada and, consequently, is a foreign corporation for Virgin Islands tax purposes.[2] As is required by its certificate of incorporation, Danbury is headquartered and maintains its only office in the Virgin Islands. Until its records were seized by federal treasury agents in May 1984, all corporate documents were maintained here. Additionally Danbury has a local

---

[1] For clarity's sake, we will make the transposition of "United States" to "Virgin Islands" in the applicable statutes throughout this opinion.

[2] 26 U.S.C. § 7701(4)–(5). A foreign corporation is one not organized under the laws of the Virgin Islands.

bank account and, pursuant to its bylaws, holds its shareholder and director meetings in the Virgin Islands.

This corporate presence qualifies Danbury as a Virgin Islands inhabitant for tax purposes.[3] It also distinguishes it from the post office box variety shell corporation.

Danbury reported gross earnings of $782,175.55 to the Virgin Islands for the 1981–82 tax years.[4] The income was attributed to:

|  | 1981 | 1982 |
|---|---|---|
| Limited partnership distributions | $203,528.00 | $355,655.00 |
| Interest income | 52,590.00 | 168,826.05 |
| Loss from sale of diamonds | — | (1,576.50) |
| Total | $256,118.00 | $526,057.55 |

Both sources of income are located in the United States. Danbury claimed that all but $96,985.00 of its 1982 earnings was exempt and paid a $26,243.00 tax. It paid no tax on the 1981 income. The Government, however, found that the income in both years was taxable in its entirety and assessed deficiencies against Danbury of $97,750.00 and $240,607.00 for the respective years.

Danbury now moves for summary judgment. Its tax shelter is simply explained. Danbury is both a foreign corporation and an inhabitant of the Virgin Islands because it is not organized under the territory's laws but maintains its headquarters here. As an inhabitant it must pay tax on its world-wide income to the Virgin Islands' treasury. Foreign corporations, however, are taxed only on income derived in the Virgin Islands. Since Danbury's income is wholly generated from foreign sources, it owes no tax to the Virgin Islands. And because its United States obligations are satisfied under the Virgin Islands tax code, it owes no tax to the federal

---

[3] The Revised Organic Act defines inhabitants as "persons whose permanent address is in the Virgin Islands." 48 U.S.C. § 1642 (Supp. 1985). "Persons" includes corporations. Vitco, supra at 183. The Vitco Court also held that a mere post office box is sufficient to establish the requisite permanent residence. Id. at 183.

[4] Virgin Islands inhabitants, such as Danbury, satisfy their federal tax obligations by filing a single return with the territory's Bureau of Internal Revenue. 48 U.S.C. § 1642. The operation of this statute will be discussed in detail infra.

government.[5]

On the basis of this scheme, Danbury requests that we invalidate the deficiencies.

The Government, in its cross-motion for summary judgment, argues that Danbury should be treated as a domestic corporation and taxed on its world-wide income.

## III. DISCUSSION

■ The Virgin Islands collects taxes from two sources: inhabitants and non-inhabitant foreign entities. Inhabitants are taxed under the authority of 48 U.S.C. § 1642 (Supp. 1985) which provides:

> *Use of certain proceeds for expenditure; income tax obligations of inhabitants*
>
> The proceeds of customs duties, the proceeds of the United States income tax [and] the proceeds of any taxes levied by the Congress on the inhabitants of the Virgin Islands . . . shall be covered into the treasury of the Virgin Islands, and shall be available for expenditure as the Legislature of the Virgin Islands may provide: *Provided,* That the term "inhabitants of the Virgin Islands" as used in this section shall include all persons whose permanent residence is in the Virgin Islands, and such persons shall submit their income tax obligations under applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands . . . .

Simply stated, permanent residents pay tax on their world-wide income to the territory and in so doing they fulfill their federal tax obligations. See Vitco, supra at 182.

---

[5] Both the federal and territorial governments have been aware since at least 1980 of this quirk in the law. Tax Management, published by The Bureau of National Affairs, Inc., issued "Business Operations in the U.S. Virgin Islands", T.M. 336-2nd (1980), which precisely describes the loophole. Congress has considered its elimination several times, most recently in President Reagan's 1985 tax reform package. See "The President's Tax Proposals to the Congress for Fairness, Growth and Simplicity", May 1985, pp. 423–31. At oral argument, the Court was advised that income from hundreds of millions of dollars of corporate assets is currently being sheltered under the Danbury loophole. The Virgin Islands Bureau of Internal Revenue has challenged the tax returns of these foreign corporations in each instance. The Danbury case is the first of those filed in District Court to reach the level of judicial determination.

Non-inhabitant foreign entities, on the other hand, are taxed only on the income they derive in the Virgin Islands. By substituting "Virgin Islands" for the "United States" as required under the mirror theory, 26 U.S.C. § 882 provides in pertinent part:

*Tax on income of foreign corporations connected with Virgin Islands business*

(a) *Imposition of Tax*

(1) *In general.*—A foreign corporation engaged in trade or business within the Virgin Islands during the taxable year shall be taxable as provided in section 11 or 1202(a) on its taxable income which is effectively connected with the conduct of a trade or business within the Virgin Islands.

(2) *Determination of taxable income.*—In determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business within the Virgin Islands.

(b) *Gross Income*—In the case of a foreign corporation, gross income includes only—

(1) gross income which is derived from sources within the Virgin Islands and which is not effectively connected with the conduct of a trade or business within the Virgin Islands and

(2) gross income which is effectively connected with the conduct of a trade or business within the Virgin Islands.

Corporations organized in the 50 states pay tax on their world-wide income to the federal treasury but, to avoid double taxation, they receive a foreign tax credit for the taxes paid to the Virgin Islands. Chicago Bridge, supra at 974.

As a hybrid, Danbury claims the benefits of both § 1642 and § 882. The result, of course, is that its income is tax exempt. We will examine each claim separately.

A. *The § 882 Exemption*

■■ As a general rule, the income that a foreign corporation derives from stateside sources cannot be taxed by the Virgin Islands.[6] Section 882 provides that a corporation will be taxed, however, on income derived from a locally conducted trade or business or any other local source. And otherwise exempt income

---

[6] We will discuss the impact of 48 U.S.C. § 1642 on this general rule infra.

will be taxed, nevertheless, if the Virgin Islands office is a material factor in generating the income. 26 U.S.C. § 864(c)(4)(B).[7]

Although the Government concedes that § 882 applies to Danbury, we will satisfy ourselves as to whether Danbury is entitled to this exemption.

Two factors can be eliminated in short order. First, we can safely assume that Danbury located its headquarters in the Virgin Islands solely to exploit a fluke in the tax laws. The locale in no way contributed to the generation of its income. Moreover, the income clearly originated from mainland investments. The trade or business element, however, requires more consideration.

■ In order for a taxpayer to claim business or trade status on the basis of investment activity, the taxpayer must be an active investor. E.g., Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 216–17 (1940); Snyder v. Commissioner of Internal Revenue, 295 U.S. 134, 139 (1934). Active investors spend the majority of their time speculating in securities. Snyder, id.

■ Under this rule, we need not discuss whether Danbury's activities qualify as a trade or business. They obviously do not. The sources of the income are by definition synonymous with passivity. The corporation is merely a receptacle for interest income and limited partnership distributions. Thus, we conclude that Danbury is not engaged in a trade or business and hold that Danbury is entitled to the § 882 exemption.

B. *The Effect of § 1642 on the Internal Revenue Code*

The remaining obstacle—and the Government's sole defense—to Danbury's tax shelter is the effect of 48 U.S.C. § 1642 (text quoted supra) on the I.R.C. in general and on § 882 specifically.

---

[7] The statute provides in pertinent part:

(B) Income, gain, or loss from sources without the Virgin Islands shall be treated as effectively connected with the conduct of a trade or business within the Virgin Islands by a nonresident alien individual or a foreign corporation if such person has an office or other fixed place of business within the Virgin Islands to which such income, gain, or loss is attributable and such income, gain, or loss— . . .

(iii) is derived from the sale or exchange (without the Virgin Islands) through such office or other fixed place of business of personal property described in section 1221(1), except that this clause shall not apply if the property is sold or exchanged for use, consumption, or disposition outside the Virgin Islands and an office or other fixed place of business of the taxpayer outside the Virgin Islands participated materially in such sale or exchange.

The Government, in its motion for summary judgment, asserts that § 1642 authorizes the Virgin Islands to dispense with the source distinction of § 882 and tax a foreign corporation as if it were domestic. The Government's first theory is this: the plain language of § 1642 indicates that it is a taxing statute, separate from the I.R.C., which allows the territory to alter the mirror of § 882. The operative language is "inhabitants . . . shall satisfy their income tax obligations . . . by paying their tax *on income derived from all sources both within and without the Virgin Islands* into the treasury of the Virgin Islands." (Emphasis added.)

■ At the onset, we disagree with the Government's premise that § 1642 authorizes it to alter the definition of a domestic corporation. By limiting the Government's income taxing authority to the execution of nonsubstantive changes in nomenclature, the Third Circuit has implicitly held that § 1642 is not a taxing statute. See Chicago Bridge, supra at 975–76. We hold, therefore, that the Government may not tailor the provisions of the I.R.C. to suit the situation. It is bound, as we are, to enforce the statutes as enacted by Congress. E.g., Ernst, supra; Gould, supra; White, supra. The I.R.C. concisely defines foreign and domestic corporations,[8] and the Government may not dispense with these definitions, even where the alternative is the ultimate tax shelter.

In so holding, we decline to follow Rev. Ruling 80-40, the Government's sole authority for this theory. Although the subject corporation there was conducting business in the Virgin Islands, the facts of Rev. Ruling 80-40 are otherwise on point with Danbury's tax shelter. The ruling holds, under the purported authority of § 1642, that the corporation should be taxed as a domestic corporation. This ruling must be rejected as suffering from the same malady as the Government's argument. It merely states a conclusion and the fact that the result is desired is simply not enough. To paraphrase the First Circuit, we find that "attaching the label [tax shelter] is not the end of analysis. We cannot decide this case simply by saying 'No'. We have a duty to explain ourselves and to set out a rule of law to govern future cases." Textron, Inc. v. United States, 561 F.2d 1023, 1027 (1st Cir. 1977).

---

[8] 26 U.S.C. § 7701(4)–(5).

The Government argues next that the source distinctions of § 882 conflict with and are, therefore, vitiated by § 1642 because the latter gives to the Virgin Islands the authority to tax "income derived from all sources." In essence the Government contends that § 1642 precludes the mirroring of I.R.C. provisions, such as § 882 which constrain its ability to tax anything less than all income. To accept this argument is to invite the opening of a Pandora's box as to all of the I.R.C.'s tax reducing provisions such as the § 162 trade and business deduction and the § 101 exclusion of life insurance proceeds. And this we will not do.

The phrase quoted by the Government must be considered in the context of the statute. It mandates that inhabitants "shall satisfy their income tax obligations *under applicable tax statutes of the United States* by paying their tax on income derived from all sources" to the territory's treasury. (Emphasis added.) The Government persistently urges us to ignore the key words of § 1642 emphasized above. This language means nothing more than that the I.R.C. is the tax code of the Virgin Islands, an interpretation that is consistent with, and mandated by, the mirror law. 48 U.S.C. § 1397 (Supp. 1985).

It is true that § 1642 broadly defines taxable income. In this respect it is similar to the I.R.C.'s general definition of income: "gross income means all income from whatever source derived." 26 U.S.C. § 61. But it cannot be suggested with a straight face that § 61 prohibits a taxpayer from claiming the exemptions, exclusions and deductions authorized by the I.R.C. Yet the Government would have us hold that § 1642 has precisely this effect. In effect, the Virgin Islands seeks to pick and choose which sections of the I.R.C. it will honor.

▆▆▆ Like § 61, § 1642 is a general rule of inclusion and, as such, it is subject to all of the provisions of the I.R.C.—including § 882— authorizing exceptions to that rule.

Finally, we find nothing in the legislative history of § 1642 to give credence to the Government's position. Prior to the enactment of § 1642, Virgin Islands residents were taxed by both the federal and territorial government according to the source of their income. The statute abolished the source distinction by introducing a single filing requirement. The purpose was to increase the Virgin Islands' tax revenues by subjecting to local taxation both the local and mainland income of the residents. S. Rep. No. 1271 83d Cong., 2d Sess. 2, reprinted in 1954 U.S. Code Cong. & Ad. News 2585 et seq.

But there is nothing to suggest that Congress intended to allow the Virgin Islands to chip away at the mirror theory so carefully retained over all these years. Rather, it appears that the effect of § 882 in favor of a foreign corporation inhabitant filing in the Virgin Islands was overlooked. We cannot legislate the closing of this loophole by judicial fiat. To do so would encroach on prerogatives in tax matters delegated to the executive and legislative branches of government.

■ We hold then, that § 1642 simply provides the basic tax procedure for territorial inhabitants who derive income from either or both Virgin Islands and foreign sources. It has no independent effect on the provisions of the I.R.C.

## IV. CONCLUSION

■ We hold that the deficiencies assessed against Danbury were improper because the corporation's income is exempt from taxation under 26 U.S.C. § 882.

We are not, however, deciding this case in a vacuum. Danbury was organized for the specific purpose of exploiting a gap in the tax laws—a gap that is truly the ultimate tax shelter. We are certain that Congress did not intend to create this aperture in the tax laws.[9] But where one occurs it is the exclusive province of Congress and the federal chief executive to close it. And until this is accomplished, a corporation may pursue the Danbury route.

## SUMMARY JUDGMENT

THIS MATTER is before the Court upon the cross-motions of the parties for summary judgment. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED and DECREED:

THAT the motion of the petitioner for summary judgment be, and the same is hereby GRANTED and further

---

[9] The loophole discussed in this opinion is not the only anomaly which results from the mirror system. In President Reagan's 1985 proposals for tax reform mentioned in footnote 5, it states at page 426:

". . . the mirror system gives rise to numerous areas of ambiguity and problems of interpretation. These technical difficulties have made administration of the law problematic, created a climate of uncertainty for investors, and raised the possibility of unintended tax benefits for some and harsh consequences for others."

THAT the motion of the respondent for summary judgment be, and the same is hereby DENIED and further

THAT the deficiencies assessed by the Virgin Islands Bureau of Internal Revenue for the years 1981 and 1982 against the petitioner be, and the same are hereby INVALIDATED.