**DANBURY, INC., Appellee,**

v.

**Anthony OLIVE, Director, Bureau of Internal Revenue, Government of the Virgin Islands, Appellant.**

No. 86–3091.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1986.

Decided June 5, 1987.

Rehearing and Rehearing In Banc Denied July 6, 1987.

---

Leroy A. Mercer, Atty. Gen., Dept. of Law, Government of the Virgin Islands, Meno W. Piliaris (argued), Asst. Atty. Gen. (Tax), Dept. of Law, Joanne E. Bozzuto, Asst. Atty. Gen., Tax Dept., Government of the Virgin Islands, Christiansted, St. Croix, United States Virgin Islands, for appellant.

Todd H. Newman, Newman & Silverlight, Christiansted, St. Croix, United States Virgin Islands, William A. Seligmann (argued), Nelson, Seligmann & Wright, Los Angeles, Cal., for appellee.

Gustave A. Danielson, Gustav A. Danielson & Co., P.C., St. Thomas, United States Virgin Islands, Adrienne C. Palmer, Adrienne C. Palmer, P.C., St. Thomas, United States Virgin Islands, for amici curiae.

Elizabeth K. Ainslie, Ainslie & Schenck, Philadelphia, Pa., Michael Savage, Gersten, Savage & Kaplowitz, New York City, for amicus Fidelity Intern. Trust Co.

James W. Diehm, U.S. Atty., Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, David English Carmack, Tax Div., Dept. of Justice, Washington, D.C., for Commissioner of Internal Revenue amicus curiae.

Before SLOVITER, STAPLETON, and ROSENN, Circuit Judges.

STAPLETON, Circuit Judge.

Danbury, Inc. ("Danbury"), a Nevada corporation that maintains its sole office in the Virgin Islands, instituted this litigation by filing a "Petition for Redetermination of Alleged Income Tax Deficiency" in the District Court of the Virgin Islands. The Virgin Islands' Bureau of Internal Revenue ("the BIR") appeals from a January 24, 1986, district court decision that granted summary judgment to Danbury.

The district court erroneously concluded that the tax law then applicable in the Virgin Islands to a corporation such as Danbury did not support the deficiencies alleged by the BIR. Furthermore, on October 22, 1986, the Tax Reform Act of 1986 ("the Tax Reform Act") became law. We will reverse and remand the case for con-

sideration of whether the tax years at issue here, 1981 and 1982, are "pre–1987 open years" for Danbury, as that phrase is used in the Tax Reform Act.

## I.

The facts underlying this dispute are simple and uncontested. Danbury is a holding company for the investments of its two shareholders. Although incorporated under the laws of Nevada, Danbury keeps all its corporate documents at its sole office in the Virgin Islands, maintains a Virgin Islands bank account, and holds all its shareholders' and directors' meetings in the islands.

On September 15, 1982, Danbury filed its income tax return for the year 1981 with the BIR, disclosing income of $256,118. The corporation paid no tax. On July 1, 1983, Danbury filed its return for the year 1982 with the BIR, disclosing "taxable income" of $96,985 and other income of $526,057.55. Danbury paid the BIR $26,-243. The income on which Danbury did not pay tax, $256,118 in 1981 and $526,057.55 in 1982, came from sources outside the Virgin Islands that were not part of a Virgin Islands trade or business. Danbury did not file an income tax return for either 1981 or 1982 with the Internal Revenue Service of the United States.

On September 4, 1985, the BIR notified Danbury that it had found a $97,750 tax deficiency for 1981 and a $240,607 deficiency for 1982. The deficiency notice referred Danbury to 48 U.S.C. section 1642, stating that under this statute "foreign corporations such as yourself are taxed just as if you were a domestic corporation and satisfy both your U.S. and V.I. income tax obligation by paying V.I. income tax on your income from all sources." App. at 14.

Pursuant to title 33, section 943(a) of the Virgin Islands Code and 48 U.S.C. section 1612(a), Danbury filed suit in the District Court of the Virgin Islands to contest the asserted deficiencies. Danbury's complaint claimed that no additional tax was due because the applicable tax statute did not require it to pay tax on its income from sources outside the Virgin Islands and be-

cause collection of additional tax by the BIR was barred by waiver, estoppel, and limitations. Danbury apparently dropped its waiver, estoppel, and limitations arguments during oral argument in the district court. The district court decided the remaining issue on cross-motions for summary judgment. *See Danbury, Inc. v. Olive,* 627 F.Supp. 513 (D.V.I.1986).

## II.

To understand the particular statutory provisions relevant here, one must have some general knowledge of the evolution of income tax law in the Virgin Islands since Denmark ceded the islands to the United States in 1917. At the outset, therefore, we briefly describe this evolution.

An act of Congress in 1917 continued the force and effect of all local laws imposing taxes, so far as compatible with the change in sovereignty, until Congress provided otherwise. Act of Mar. 3, 1917, ch. 171, § 4, 39 Stat. 1133 (codified as amended at 48 U.S.C.A. § 1395 (West 1952)). Then in the Naval Appropriations Act of 1921, Congress declared that the income tax laws of the United States also constitute the income tax laws of the Virgin Islands, with the proceeds from the laws, when they function as Virgin Islands laws, to be paid into the treasury of the Virgin Islands rather than the treasury of the United States. Naval Appropriations Act of 1921, ch. 44, § 1, 42 Stat. 123 (codified as amended at 48 U.S.C.A. § 1397 (West Supp.1987)); *see also* V.I.Code Ann., tit. 33, § 1931(15) (1967). This 1921 statute set up the "mirror tax" system that remains in use: "Virgin Islands" is in effect substituted for "United States" (and vice versa) in the Internal Revenue Code so that, to satisfy Virgin Islands tax obligations, an individual or corporation in the Virgin Islands pays taxes to the BIR equivalent to the taxes an individual or corporation under the same circumstances in the United States would pay to the Internal Revenue Service. *See, e.g., HMW Industries, Inc. v. Wheatley,* 504 F.2d 146, 150 (3d Cir.1974) (Congress "create[d] a separate taxing structure for the Virgin Islands 'mirroring' the provi-

sions of the federal tax code except as to those provisions which are incompatible with such a separate tax structure"); *Vitco, Inc. v. Government of Virgin Islands*, 560 F.2d 180, 185 (3d Cir.1977) (substantive equality of treatment between mainland taxpayer and Virgin Islands taxpayer is goal of mirror system), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).

The U.S. Treasury Department and the Internal Revenue Service did not immediately implement the mirror system despite the clear language of the 1921 statute. Until 1935, these agencies treated the Virgin Islands as a "collection district" for United States taxes, rather than recognizing the distinct tax jurisdiction that the islands constitute according to the Naval Appropriations Act. *See* I.T. 1454, I–2 C.B. 180 (1922), *revoked by* I.T. 2946, XIV–2 C.B. 109 (1935). Under the collection district approach, all taxpayers with attachments to both locations filed only one return, either in the Virgin Islands or the United States, depending upon where the taxpayer resided on the last day of the tax year.

When the mirror system was actually implemented in 1935, some taxpayers were required to file two returns. For example, a corporation considered "domestic" in the United States but doing business as a foreign corporation in the Virgin Islands was required to submit a return to the BIR, paying tax on income from sources in the Virgin Islands, and to submit a return to the Internal Revenue Service, paying tax on worldwide income, with a foreign tax credit allowed for the tax paid to the Virgin Islands. The mirror system, with its two separate taxing jurisdictions, operated similarly for citizens of the United States who resided in the Virgin Islands. *Cf. Chicago Bridge & Iron Co. v. Wheatley*, 430 F.2d 973, 974 & n. 1 (3d Cir.1970) (even after 1954, non-inhabitant U.S. citizens or U.S.-chartered corporations that earned income from a source in the Virgin Islands were required to file two returns; situation changed in 1954 for permanent residents), *cert. denied*, 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 809 (1971).

Section 28(a) of the 1954 Revised Organic Act of the Virgin Islands ("Section 28(a)") altered the post–1935 administration of the tax laws as follows:

> The proceeds of customs duties, the proceeds of the United States income tax, the proceeds of any taxes levied by the Congress on the inhabitants of the Virgin Islands, and the proceeds of all quarantine, passport, immigration, and naturalization fees collected in the Virgin Islands ... shall be covered into the treasury of the Virgin Islands, and shall be available for expenditure as the Legislature of the Virgin Islands may provide: *Provided*, That the term "inhabitants of the Virgin Islands" as used in this section shall include all persons whose permanent residence is in the Virgin Islands, and such persons shall satisfy their income tax obligations under the applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the treasury of the Virgin Islands....

Revised Organic Act of the Virgin Islands, ch. 558, § 28(a), 68 Stat. 508 (1954) (codified as amended at 48 U.S.C.A. § 1642 (West Supp.1987)). In addition, Congress in 1954 enacted a section of the Internal Revenue Code that established:

> For purposes of this title ... section 28(a) of the Revised Organic Act of the Virgin Islands shall be effective as if such section had been enacted subsequent to the enactment of this title.

26 U.S.C.A. § 7651(5)(B) (West 1967) (current version at 26 U.S.C.A. § 7651(5)(B) (West Supp.1987)). These statutory provisions brought the relevant law to the point where it stood at the time of the district court's decision. We parse Section 28(a) and 26 U.S.C. § 7651(5)(B) below.

## III.

An appeal from a summary judgment triggers plenary review by the court of appeals. *See Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir.1985). Our analysis begins with an application of the law in effect when the

lower court granted summary judgment to Danbury. We will then turn to the impact of the Tax Reform Act.

Danbury's identity determines the tax laws that apply to the corporation. First, Danbury is a "domestic" corporation with respect to the tax laws of the United States, the non-mirrored Internal Revenue Code. *See* 26 U.S.C.A. § 7701(a)(4) (West Supp.1987) ("'domestic' when applied to a corporation ... means created or organized in the United States or under the law of the United States or of any State"). With respect to the tax laws of the Virgin Islands the mirrored Internal Revenue Code, Danbury is a "foreign" corporation. *See Vitco, Inc. v. Government of Virgin Islands,* 560 F.2d 180, 181 (3d Cir.1977) (New York corporation is "'foreign' for Virgin Islands tax purposes"), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *Sayre & Company v. Riddell,* 395 F.2d 407, 412 (9th Cir.1968) (en banc) (under Guam's mirrored Internal Revenue Code, "a corporation organized in Guam is 'domestic'" and "a corporation organized elsewhere [i.e., in one of the United States] is 'foreign'"). Furthermore, the parties agree that Danbury qualifies as an "inhabitant" of the Virgin Islands as that term is used in Section 28(a).[1] This court pointed out in *Vitco, supra,* that "'[i]nhabitants' includes corporations as well as natural persons." 560 F.2d at 182 (citation omitted). According to the record before us, Danbury's only presence, and thus its "permanent residence," is in the Virgin Islands. An "inhabitant" is one whose permanent residence is on the islands. 48 U.S.C.A. § 1642 (Section 28(a)).

There is no dispute that such a corporation, absent Section 28(a), would file two tax returns—one with the BIR and one with the Internal Revenue Service. This foreign corporation's gross income on the BIR return would include only:

(1) gross income which is derived from sources within [the Virgin Islands] and which is not effectively connected with the conduct of a trade or business within [the Virgin Islands], and

(2) gross income which is effectively connected with the conduct of a trade or business within [the Virgin Islands].

26 U.S.C.A. § 882(b) (West Supp.1987) (mirrored). As a domestic corporation, its gross income on the United States return would include its worldwide income. *See* 26 U.S.C.A. § 61 (West Supp.1987) ("[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived"). From the respective gross income figures, the corporation would calculate its tax liability according to the appropriate version of the Code, the mirrored Code for the BIR return and the literal Code for the Internal Revenue Service return.

Section 28(a) does not affect the total amount of tax owed by such a corporation, but does direct the corporation to pay its total tax liability, under both the mirrored and non-mirrored versions of the Code, into the Virgin Islands treasury. The language of the section is unambiguous. Section 28(a) first states that "the proceeds of the United States income tax" collected in the Virgin Islands are to be "covered into the treasury of the Virgin Islands," for spending by the Virgin Islands legislature rather than by Congress. It then provides that inhabitants "shall satisfy their income tax obligations under the applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands" into the islands' treasury. This proviso implements Congress' stated goal of depositing proceeds from the U.S. income tax into the treasury of the Virgin Islands. "[I]ncome tax obligations under the applicable taxing statutes of the United

---

1. The Commissioner of Internal Revenue of the United States submitted a brief as *amicus curiae* on February 6, 1987, in response to this court's invitation to the Commissioner to express his views concerning the issues in this case. The Commissioner's brief asserts that "the United States would likely take the position that the taxpayer here was an inhabitant of the United States and not of the Virgin Islands." Commissioner's Brief at 4 n. 3. We must, however, rely on the facts as stipulated by the parties to resolve the questions now before us. The Commissioner has not formally intervened in this matter.

States" in Section 28(a) means just that— taxes owed under applicable provisions of the non-mirrored Internal Revenue Code.

Section 7651(5)(B) of the Internal Revenue Code, quoted above as it read from 1954 until enactment of the Tax Reform Act, functioned to make Section 28(a)'s proviso effective by eliminating an inconsistency. The language of the Internal Revenue Code ("this title") speaks in terms of all United States taxpayers owing their United States taxes to the Internal Revenue Service. Section 7651(5)(B), however, enables Virgin Islands inhabitants to comply with Section 28(a) (requiring payment of United States taxes to the Virgin Islands) because, under section 7651(5)(B), Section 28(a) is to be treated as if it were enacted after all of the Internal Revenue Code, thereby overriding the Code's requirement of payment to the Internal Revenue Service.

Thus, looking at the applicable law prior to the Tax Reform Act, Danbury owed the BIR (1) Virgin Islands taxes on Virgin Islands-generated income, under the Naval Appropriations Act, and (2) U.S. taxes on worldwide income, figured with a tax credit for any Virgin Islands or other foreign taxes paid, under Section 28(a). As the BIR stated in its deficiency notice to Danbury, a shorthand way of arriving at the sum that will satisfy both the U.S. and Virgin Islands tax obligations for an inhabitant, U.S.-chartered corporation such as Danbury is to treat the corporation as if it were domestic in the Virgin Islands and then simply figure its liability under the mirrored Code.[2]

Danbury here attempts to escape its tax liability under the Internal Revenue Code for 1981 and 1982 by mirroring the proviso of Section 28(a). The corporation would have us read "the applicable taxing statutes of the United States" as meaning "the *mirrored* Internal Revenue Code." *See* Appellee's Brief at 39–40.[3] According to Danbury, this proper reading of Section 28(a) requires the filing of only a return with the BIR and the paying of only the tax owed as a foreign corporation under the mirrored Code. Danbury's interpretation of Section 28(a) renders its income from sources outside the Virgin Islands tax-free in both the U.S. and the Virgin Islands taxing jurisdictions.

Danbury's attempted change in the plain meaning of Section 28(a) is without foundation. Section 28(a) is not a taxing provision, but rather is part of comprehensive legislation that reorganized the administration of government in the Virgin Islands. Indeed, Danbury concedes that the section "is not a tax law." Appellee's Brief at 21. Because Section 28(a) is not part of the Internal Revenue Code, it stands outside the mirror tax system and thus there is no basis for changing its explicit language. Danbury fails to recognize that a mirroring system merely upsets basic principles of statutory construction within a very limited scope—the scope of the statutes that are to apply in two jurisdictions. In this case, "[t]he income-tax laws in force in the United States of America" are also applied in the Virgin Islands, requiring interpreting courts to make some nomenclature changes. Naval Appropriations Act of 1921, *supra; see also* V.I.Code Ann., tit. 33, § 1931(15) (" 'Virgin Islands income tax law' means so much of the United States Internal Revenue Code as was made applicable to the Virgin Islands" by the Naval Appropriations Act). To construe Section 28(a), however, "the starting point is of

---

2. The BIR does not argue that Section 28(a) actually amends the mirrored Code, altering the definition of gross income for a foreign corporation in the Virgin Islands. The BIR correctly explains that Section 28(a) results in United States and Virgin Islands taxes for Danbury, owed to the BIR, that can be calculated by treating the corporation as *if* it were a domestic corporation. The district court erred by viewing this case as an attempt by the BIR to amend the mirrored Code.

3. As an elaboration of the same argument, Danbury emphasizes that Section 28(a)'s reference to "tax on income derived from all sources both within and outside the Virgin Islands" should be construed as Virgin Islands tax figured only on the basis of income from the Virgin Islands for a foreign corporation such as Danbury. Danbury decries the "fail[ure] to distinguish between nontaxable receipts and taxable income" that it views as an error in the BIR's reading, and this court's reading, of Section 28(a). Appellee's Brief at 17.

course the language of the statute itself." *National Freight, Inc. v. Larson,* 760 F.2d 499, 503 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985). As discussed above, the language of Section 28(a) clearly states that inhabitants of the Virgin Islands must pay their U.S. income taxes directly to the BIR.

It is important to point out that if Section 28(a) did extinguish inhabitants' liability for U.S. taxes, Section 28(a) would be internally inconsistent. If the section's proviso eliminates U.S. tax obligations for corporations such as Danbury and for U.S. citizens who permanently reside in the Virgin Islands, as under Danbury's reading it would, the proviso eliminates "the proceeds of the United States income tax ... collected in the Virgin Islands" referred to in the main clause of the section. Danbury has advanced no reason why Congress at the outset would give proceeds to the Virgin Islands and then later in the same section make those proceeds disappear.

Moreover, much of Section 28(a) would be superfluous and much of its meaning left unstated according to Danbury's reading. Danbury asserts that the proviso means that all inhabitants, including foreign corporations, must pay their *Virgin Islands* taxes to the BIR. Read this way, the proviso merely reiterates what the Naval Appropriations Act had specified many years earlier. In addition, this reading erases any textual support for the proposition, also advanced by Danbury, that Section 28(a) extinguishes inhabitants' tax liability to the Internal Revenue Service. Danbury is left in the untenable position of citing a revenue ruling interpreting Section 28(a), the conclusion of which Danbury denounces (a conclusion consistent with this court's reading of the section), for the proposition that the corporation must only file a return with the BIR and need not file with the Internal Revenue Service. *See* Appellee's Brief at 12–13 (citing Revenue Ruling 80–40 for need to file only one return); *id.* at 18–19 (rejecting authority of Revenue Ruling 80–40). We discuss this revenue ruling in more detail below.

Were we to consider Section 28(a) ambiguous and therefore turn to extrinsic indications of its meaning, our reading—of inhabitants' liability to the BIR for U.S. taxes—would remain the same. The purpose of the Revised Organic Act "is to provide a new organic act, or basic charter of civil government, for the people of the Virgin Islands." S.Rep. No. 1271, 83d Cong., 2d Sess, *reprinted in* 1954 U.S.Code Cong. & Admin.News 2585, 2585. The legislative history indicates that one of the primary reasons for enacting a new charter was to increase the economic autonomy of the islands. The Senate report notes concern for "unbalanced Federal budgets" as well as touting the bill as "a step forward toward the day when the Virgin Islands could be self-sustaining." S.Rep. No. 1271, *supra,* at 2586. In light of this congressional mindset, we cannot accept Danbury's interpretation of Section 28(a), an interpretation that results in the federal treasury giving up revenue (proceeds from the U.S. income tax) without bestowing that revenue on the Virgin Islands.

The Internal Revenue Service has explained its reading of Section 28(a) in Revenue Ruling 80–40, 1980–1 C.B. 175, and Revenue Ruling 60–291, 1960–2 C.B. 407. Revenue Ruling 80–40 states:

> Section 28(a) requires inhabitants to satisfy their United States and Virgin Islands income tax obligations arising under Chapter 1 of the Code (as applicable in each jurisdiction) by filing a single return with, and paying to, the Virgin Islands the Virgins Islands territorial income tax (the Code as mirrored into the Virgin Islands) on their income from all sources.

1980–1 C.B. 175, 176. The ruling goes on to explain:

> Congress, in section 28(a) of the R.O.A., made it clear that such income [income of an inhabitant, U.S.-chartered corporation coming from non-Virgin Islands sources] ... would not escape taxation by using the words "paying their tax on *income derived from all sources both within and outside the Virgin Islands* into the Treasury of the Virgin Islands" (empha-

sis added). Thus in effect, S [an inhabitant, U.S.-chartered corporation] is taxed as if it were a Virgin Islands corporation and satisfies both its United States and Virgin Islands income tax obligations by paying the Virgin Islands territorial income tax on its income from all sources. *Id.* In Revenue Ruling 60–291, the Internal Revenue Service ruled that Section 28(a) required United States citizens domiciled in the Virgin Islands to pay the taxes imposed on them by the 1954 Internal Revenue Code into the Virgin Islands' treasury. Revenue rulings are "administrative in nature and do not have the force of law," *Becker v. Commissioner*, 751 F.2d 146, 149 (3d Cir.1985), but here they do provide persuasive evidence of others reading Section 28(a) as this court reads it.

The only interpretation inconsistent with our reading that Danbury can produce, other than its own assertions, is found in a private publication, read mainly by tax lawyers, that describes the interpretation now argued by Danbury as a "tax haven theory." *Business Operations in the U.S. Virgin Islands*, Tax Mgmt. (BNA) No. 336–2d, at A–91 (1978). Danbury is the first taxpayer to raise the tax-loophole theory in court—over thirty years after Congress enacted the statute at the heart of Danbury's contentions. This attempt to avoid assessment of an income tax deficiency apparently arose from the "creative" analysis offered by the article in Tax Management, rather than from a rational consideration of the actual taxing and administrative statutes.

■ In sum, setting aside for the moment any possible impact of the Tax Reform Act, we conclude that the district court should have awarded the BIR summary judgment, for Danbury owed the Virgin Islands its taxes under both the literal and the mirrored versions of the Internal Revenue Code. The facts of the taxpayer's situation are undisputed. The law, as it stood at the time of the lower court's decision, supported the BIR's notice of deficiency.

## IV.

■ This court, however, must apply the law in effect when it resolves an appeal. The court will apply a statute passed after decision in the trial court if that law is a valid enactment. *See Thorpe v. Housing Authority*, 393 U.S. 268, 281–82, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969). As Chief Justice Marshall explained almost two centuries ago,

> [I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, ... I know of no court which can contest its obligation.

*United States v. Schooner Peggy*, 1 Cranch (U.S.) 103, 110, 2 L.Ed. 49 (1801), *quoted in Thorpe*, 393 U.S. at 282, 89 S.Ct. at 526. Therefore, we now consider the instant dispute in light of the Tax Reform Act.

■ The new statute includes a provision entitled "Clarification of Treatment of the Virgin Islands Inhabitants." Tax Reform Act of 1986, Pub.L. No. 99–514, § 1275(b), 100 Stat. 2598 (1986). This provision, section 1275(b) of the Tax Reform Act ("Section 1275(b)"), amends 26 U.S.C. section 7651(5)(B) to read:

> For purposes of this title, section 28(a) of the Revised Organic Act of the Virgin Islands shall be effective as if such section 28(a) had been enacted before the enactment of this title and such section 28(a) shall have no effect on the amount of income tax liability required to be paid by any person to the United States.

26 U.S.C.A. § 7651(5)(B) (West Supp.1987). Section 1275(b) thus repeals the "inhabitant rule" discussed above—the rule that inhabitants of the Virgin Islands satisfy tax obligations to the United States by paying those taxes to the Virgin Islands rather than to the Internal Revenue Service. Section 1275(b) restores the administration of the mirror tax system in the Virgin Islands to its 1935–1954 state. Under the new law, a corporation such as Danbury pays its taxes under the mirrored Code to the BIR

and pays its taxes under the literal Code to the Internal Revenue Service.[4]

Section 1277(c)(2) of the Tax Reform Act ("Section 1277(c)(2)") addresses when and how Section 1275(b) is to be implemented:

(A) In General.—The amendment made by section 1275(b) shall apply with respect to—

(i) any taxable year beginning after December 31, 1986, and

(ii) any pre–1987 open year.

(B) Special Rules.—In the case of any pre–1987 open year—

(i) the amendment made by section 1275(b) shall not apply to income from sources in the Virgin Islands or income effectively connected with the conduct of a trade or business in the Virgin Islands, and

(ii) the taxpayer shall be allowed a credit—

(I) against any additional tax imposed by subtitle A of the Internal Revenue Code of 1954 (by reason of the amendment made by section 1275(b)) on income not described in clause (i) and from sources in the United States,

(II) for any tax paid to the Virgin Islands before the date of the enactment of this Act and attributable to such income. For purposes of clause (ii)(II), any tax paid before January 1, 1987, pursuant to a process in effect before August 16, 1986, shall be treated as paid before the date of the enactment of this Act.

(C) Pre–1987 Open Year.—For purposes of this paragraph, the term "pre–1987 open year" means any taxable year beginning before January 1, 1987, if on the date of the enactment of this Act the assessment of a deficiency of income tax for such taxable year is not barred by any law or rule of law.

Tax Reform Act of 1986, Pub.L. No. 99–514, § 1277(c)(2), *reprinted as note after* 26 U.S.C.A. § 931 (West Supp.1987).

Applying the relevant enactments since the district court's decision in this case, the crucial question becomes whether the years 1981 and 1982 are "pre–1987 open years" for Danbury. Section 1275(b) affects the case only if these years are open. The years are open if on October 22, 1986, "the assessment of a deficiency of income tax for such taxable year is not barred by any law or rule of law." Tax Reform Act of 1986, § 1277(c)(2).

To determine whether an assessment could be made on October 22, 1986, the relevant actor is the Internal Revenue Service. The clear purpose of Section 1277(c)(2) is to specify the tax years for which *the United States* can, under Section 1275(b), collect the taxes due it from Virgin Islands inhabitants. If on October 22, 1986, the United States could assess deficiencies in keeping with applicable statutes of limitation, Section 1275(b) empowers it to do so. Otherwise, Section 1275(b) is not effective, and the power to collect taxes owed by Virgin Islands taxpayers to the United States remains with the BIR for tax years prior to 1987.

The applicable time bars are found in section 6501 of the Internal Revenue Code. That section states:

(a) General Rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)....

.    .    .    .    .

(c) Exceptions.—

(1) False return.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

(2) Willful attempt to evade tax.—In case of a willful attempt in any manner to defeat or evade tax imposed by this title ... the tax may be assessed, or a proceeding in court for the collection of

---

4. Contrary to Danbury's assertions, this case does not involve retroactive taxation if the Tax Reform Act is found to apply to Danbury's 1981 and 1982 tax years. Section 7651 changes only the administration of the United States tax in the Virgin Islands. It does not alter the amount of tax owed by any taxpayer.

such tax may be begun without assessment, at any time.

(3) No return.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

26 U.S.C.A. § 6501 (West Supp.1987). Subsection 6501(e) extends the general three-year period for assessment or prosecution to six years if the taxpayer committed a "substantial omission of items." 26 U.S. C.A. § 6501(e).

■ First, we hold that sub-section 6501(c)(3) does not apply here. Danbury did not fail to file returns for 1981 and 1982. At the appropriate filing times, Section 28(a) required Danbury to satisfy both its United States and Virgin Islands tax obligations by filing and paying in the Virgin Islands. Thus Danbury's returns to the Virgin Islands satisfied its filing obligations under the literal Internal Revenue Code for the purpose of considering time bars. Were we to accept the Internal Revenue Service's argument that sub-section 6501(c)(3) does apply to this case, every tax year since 1935 for every Virgin Islands inhabitant would be an open year.[5] Congress obviously did not intend such a result. If it had, the complex time provisions of Section 1277(c)(2) would not have been enacted; Congress would have simply declared Section 1275(b) to be effective for all tax years.

Sub-section 6501(e), with its six-year period for assessment, also appears not to apply in this case. Danbury apparently reported its entire 1981 and 1982 income on its returns.

■ The latest return at issue was filed on July 1, 1983, more than three years before October 22, 1986. Consequently, we hold that the "general rule" period of three years bars assessment of additional taxes against Danbury by the Internal Revenue

Service. Therefore, the years at issue are "pre–1987 open years" only if Danbury has filed a false return, see 26 U.S.C.A. § 6501(c)(1), or made a willful attempt to evade tax, see 26 U.S.C.A. § 6501(c)(2).

It seems likely that, on remand, the BIR and Danbury will be willing to stipulate that Danbury has not engaged in such conduct. If so, we suggest that the district court provide an opportunity for the United States Commissioner of Internal Revenue to voluntarily intervene or be brought in by one or both of the current parties. If the Commissioner joins or is joined, all interested parties can have their rights determined in this suit and avoid unnecessary litigation. If the Commissioner does not become a party to this suit and the BIR and Danbury stipulate that the three-year limitations period is the one applicable to a given year, judgment should be entered for the BIR with respect to that year.

If for any reason there is a dispute on remand as to whether either year at issue is a "pre–1987 open year," the district court should consider the relevant evidence and resolve that dispute. As explained above, if one or both of the tax years are open, Section 1275(b) of the Tax Reform Act applies and transfers assessment power from the BIR to the Internal Revenue Service. Thus, with respect to open years, the new statute prevents assessment by the BIR and Danbury is entitled to a judicial declaration of that fact, albeit for reasons other than those urged by it. Accordingly, if either year is found to be a "pre–1987 open year" within the meaning of Section 1277(c)(2) and Danbury continues to seek judicial intervention, the district court should enter an appropriate judgment in its favor.[6]

## V.

We will reverse summary judgment entered for Danbury and remand this case to

---

5. As explained in note 1 of this opinion, the Commissioner of Internal Revenue has submitted a brief as *amicus curiae.*

6. We do not agree with the Commissioner's contention that this case is now moot. After the passage of the Tax Reform Act, the B.I.R. has

continued to assert that it is entitled to collect the assessed deficiencies and Danbury has continued to maintain that the B.I.R. is without authority to do so. Accordingly, this case remains a justiciable controversy.

the district court for further proceedings consistent with this opinion.